UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONE CARE INTERNATIONAL LLC and GENZYME CORPORATION,<br><br>*Plaintiffs,*<br><br>v.<br><br>PENTECH PHARMACEUTICALS, INC.,<br><br>*Defendant.* | Civil Action No.: 08-cv-1083<br><br>Honorable Robert M. Dow Jr.<br>Magistrate Judge Martin C. Ashman |

### PLAINTIFFS' BRIEF REGARDING TIMING OF CLAIM CONSTRUCTION

Plaintiffs Bone Care International LLC and Genzyme Corporation (hereinafter collectively "Genzyme" or "Plaintiffs") request that the Court set a schedule whereby claim construction proceedings commence after the completion of fact discovery. For the reasons set forth in more detail below, Plaintiffs believe that such a schedule best serves the interest of judicial economy.

### Parties' Dispute On The Timing Of Claim Construction

On April 21, 2008, the parties filed a Joint Rule 26(f) Report, wherein they outlined their disagreement on the timing of claim construction proceedings. Plaintiffs proposed that claim construction coincide with expert discovery, with the exchange of a preliminary claim construction chart occurring March 6, 2009, after the agreed-upon and entered date (February 20, 2009) for the completion of fact discovery. Defendant Pentech Pharmaceuticals, Inc. ("Defendant") proposed that claim construction coincide with fact discovery, with the exchange of a preliminary claim construction chart occurring August 8, 2008.

### Claim Construction And Patent Litigation

A patent claim defines the scope of protection conferred by a patent. The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims..." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).

Claim construction is a matter of law to be decided by the court. *Markman,* 517 U.S. at 372. However, this is somewhat of an oversimplification. The end result of any claim construction is to "determine what a person of ordinary skill in the art would understand claim terms to mean…" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc). Hence, claim construction is in essence a retrospective search for a hypothetical "fact": what did the claim mean to a person of ordinary skill in the art at the time the patent application was filed?

### Timing Of Claim Construction Is At The Discretion Of The Court

No authority instructs the district court how or when claim construction should occur. In fact, it is unquestionably in this Court's discretion to decide those issues.

Plaintiffs advocate conducting claim construction after the conclusion of fact discovery on the belief that such a schedule best serves the interest of judicial economy by ensuring the parties have sufficient time to: (1) determine what the decisive claim construction issues are, and (2) identify all the evidence this Court may need to construe those claim terms actually in dispute.

### *Determining The Decisive Claim Construction Issues*

There are likely to be more claims in dispute at the outset of litigation than after fact discovery, when the parties have exchanged and answered interrogatories and fully developed their factual positions relating to infringement (*i.e.*, Plaintiffs have a complete understanding of Defendant's product) and validity (*e.g.*, Defendant has determined all the prior art it intends to rely on). It is only when their factual positions are known that the parties can determine what claims will be asserted and what the decisive claim construction issues are. In turn, only those issues that are actually in dispute are raised with the Court, thus ensuring judicial resources are not wasted on matters not germane to the litigation. *See Toter, Inc. v. City of Visalia, et al.*, 1997 U.S. Dist. LEXIS 18898 (July 11, 1997 E.D. Cal.) (the court refused defendant's motion for an early *Markman* hearing because the parties did not yet know the terms in dispute, and an early *Markman* hearing would not promote the interest of judicial economy).

Plaintiffs' request to schedule claim construction proceedings after the completion of fact discovery is consistent with district court practice generally. In 2002 the American Bar Association polled members of its Intellectual Property Section regarding the timing of claim construction in their cases. According to the respondents, in 78% of the cases claim construction occurred after discovery but before trial. *See Claim Interpretation Proceedings and Appellate*

*Review*, Committee No. 601 Subcommittee A, 2002-2003[1]; s*ee also Metrologic Instruments, Inc. v. Symbol Technologies, Inc.*, 460 F. Supp. 2d 571, 582 (D.N.J., 2006) ("…courts generally hold [Markman hearings] before the infringement trial and after the parties have conducted discovery relating to their respective contentions as to claim construction. Within this District, for instance, it is a common practice for courts to conduct *Markman* hearings after discovery is completed.").

Moreover, Plaintiffs' reasoning has been endorsed by the Federal Circuit. *Sofamor Danek Group, Inc. v. Depuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art."); *see also Collegenet, Inc. v. Applyyourself, Inc.*, 418 F.3d 1225, 1234 (Fed. Cir. 2005) ("The trial court has discretion to develop the record fully and decide when the record is adequate to construe the claims.").

In this case Pentech has asserted that its product does not infringe the patents-in-suit. In order to ensure only relevant claim construction issues are presented to this Court it is necessary for Plaintiffs to understand the details of Defendant's product so that Plaintiffs can assess what issues are germane to the infringement analysis – as opposed to guessing what all the issues may be. This process has not yet begun. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991), reh'g en banc denied, 1991 U.S. App. LEXIS 33486 (Fed. Cir. May 14, 1991) ("In 'claim construction' the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art. **Of course the particular accused product (or process) is kept in mind, for it is efficient to focus on the construction of only the disputed elements or limitations of the claims.**" [Emphasis added]).

It is not permissible to prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product. However, Plaintiffs advocate the common sense proposition that with knowledge of the accused product, the parties can ensure this Court does not render an advisory opinion on issues irrelevant to the litigation.[2]

---

[1] The survey yielded twenty-four (24) responses reporting on thirty-two (32) separate *Markman* hearings from sixteen (16) districts courts around United States.

[2] *See Lava Trading, Inc. v. Sonic Trading Management, LLC, et al.*, 445 F.3d 1348, 1350 (Fed. Cir. 2006) ("Without knowledge of the accused products, this court cannot assess the accuracy of the infringement judgment under review and lacks a proper context for an accurate claim construction. 'While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction.' (internal citations omitted) **Without the vital contextual knowledge of the accused products or processes, this appeal takes on the attributes of something akin to an advisory opinion on the scope of the [patent at issue].**" (Emphasis added))

3

### *Identifying All Potentially Relevant Evidence*

Two sources of evidence are considered during claim construction. The first and most important source is intrinsic evidence, comprising the patent claims, patent specification and prosecution history. *Phillips*, 415 F.3d at 1314. The second source is extrinsic evidence, which includes prior art, articles, dictionaries, and inventor and expert testimony, among other things. *Id.* at 1317.

There is a heavy presumption that a claim term carries its ordinary and customary meaning, which is the meaning that a person of ordinary skill in the art in question at the time of the invention would ascribe.[3] *Phillips*, 415 F.3d at 1312-13; *see also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed.").

Although intrinsic evidence is the most important source of evidence, extrinsic evidence assists the court by providing technological context and the understanding of a person of ordinary skill in the art, so the court can construe claims through his eyes. Recognizing that judges are generally not persons of ordinary skill in the art, the Federal Circuit has described the use of extrinsic evidence as follows:

> In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence. Nonetheless, because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence. In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.

*Phillips*, 415 F.3d at 1319.

Extrinsic evidence is procured during fact discovery. Claim construction scheduled after the completion of fact discovery will ensure that this Court has the option of receiving such

---

[3] The patents at issue here deal with, in general terms, the use of doxercalciferol (the active agent in Genzyme's Hectorol® product), for lowering or maintaining lowered serum parathyroid hormone in patients suffering from hyperparathyroidism secondary to end stage renal disease, and doxercalciferol characterized by a specified purity profile.

evidence, and that any claim construction decision need not be revisited in light of factual information discovered thereafter.

## Conclusion

For the reasons set forth above, scheduling claim construction to commence after the completion of fact discovery will allow the Court to decide, based on a complete factual record, only those claim construction issues germane to the litigation and, consequently, save judicial time and resources.

Dated: May 23, 2008

Respectfully submitted,

_____/s/ Jennifer Yule DePriest_____
Sarah R. Wolff (Bar No. 3123733)
Jennifer Yule DePriest (Bar No. 6272137)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jdepriest@reedsmith.com

Robert L. Baechtold (admitted pro hac vice)
Scott K. Reed (admitted pro hac vice)
Filko Prugo (admitted pro hac vice)
Fiona E. Darkin (admitted pro hac vice)
Daniel J. Minion (admitted pro hac vice)
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York 10112-3800
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2008, a copy of the foregoing **Plaintiffs' Brief Regarding Timing Of Claim Construction** was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

_____/s/ Jennifer Yule DePriest_____
Jennifer Yule DePriest