IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONE CARE INTERNATIONAL LLC and GENZYME CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>PENTECH PHARMACEUTICALS, INC.,<br>    Defendant. | ) <br> ) <br> ) Civil Action No. 08 C 1083 <br> ) <br> ) JUDGE DOW <br> ) MAGISTRATE JUDGE ASHMAN <br> ) <br> ) <br> ) <br> ) |

**PENTECH'S BRIEF IN SUPPORT OF DESIGNATING
CERTAIN PORTIONS OF ITS ANDA AS HIGHLY CONFIDENTIAL
UNDER THE PROPOSED STIPULATED PROTECTIVE ORDER**

**I.   INTRODUCTION**

Plaintiffs' in-house counsel should not see Pentech's highly confidential trade secrets, and disclosure of them is unnecessary and its inadvertent disclosure or use can irreparably harm Pentech. Plaintiffs' outside counsel will have access to the trade secrets at issue and can advise Plaintiffs on litigation strategy. Thus, Plaintiffs will not be prejudiced if its in-house counsel is denied access to Pentech's trade secrets as Pentech itself has no in house counsel. This Court recently precluded plaintiffs' in-house from having access to Pentech's trade secrets.

**II.   FACTUAL BACKGROUND**

Pentech filed Abbreviated New Drug Application ("ANDA") No. 90-040 seeking FDA approval to commercially manufacture and sell its generic product. *See* Declaration of Pentech's Bruce Ronsen, Ph.D. ("Ronsen Decl.") at ¶ 9. When FDA approved, Pentech's generic product will directly compete with Plaintiffs' HECTOROL® for treating kidney disease. *Id.*

The parties do not agree on whether in-house counsel should see information designated HIGHLY CONFIDENTIAL, *i.e.*, whether the Chemistry, Manufacturing and Control ("CMC")

182961_1

section of the ANDA and related documents should be designated "HIGHLY CONFIDENTIAL" (as Pentech advocates) or "CONFIDENTIAL" (as Plaintiffs advocate). The CMC section of the ANDA and related documents disclose some of Pentech's most closely-held and valuable trade secrets: its processes for manufacturing and testing (1) the active pharmaceutical ingredient (API) and (2) the final doxercalciferol containing product that is the subject of its ANDA. *Id.* at ¶ 10. Pentech has agreed to allow two of Plaintiffs' in-house counsel access to all of the sections of its ANDA, other than those that concern the CMC and related documents that concern the CMC, far more than in prior cases. *Id.* at ¶ 11; *see also* Declaration of Robert S. Silver, Esq. ("Silver Decl.") at ¶¶ 7-8.

Both parties are pharmaceutical companies that research and develop drug products for various diseases, including kidney disease and certain rare inherited or immune disorders and are direct competitors. Ronsen Decl. at ¶ 8. Pentech is a small, privately-held pharmaceutical company with 11 employees. *Id.* at ¶ 3. Plaintiffs have 10,000 employees, including in-house counsel, with annual revenue exceeding $3 billion. *See Id.* at ¶ 8. Unlike Plaintiffs, Pentech does *not* have in-house counsel and thus relies solely on outside counsel to develop case strategy, weigh the merits of Pentech's legal positions, and manage case activities and resources in litigation. *Id.* at ¶ 7. To ensure its future growth and success, Pentech must aggressively protect its intellectual property, including its valuable trade secrets disclosed. *Id.* at ¶ 10.

A very similar issue was recently addressed by the Court in *Connetics et. al. v. Pentech*, 07 Civ. No. 6297 where Judge Gottschall precluded plaintiffs' in-house counsel from having access to Pentech's entire ANDA. *See* Silver Decl. at ¶¶ 3-4, 7-10.

### III. ARGUMENT

The Court has broad discretion in conducting discovery and fashioning appropriate

protective orders. *See, e.g., Amsted Indus., Inc. v. National Castings, Inc.*, No. 88 C 924, 1988 WL 90022, at * 1 (N.D. Ill. Aug. 22, 1988). Under Fed.R.Civ.P. 26(c)(7), the Court may enter a protective order such that "trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way."

Under highly competitive circumstances, such as here, courts have recognized the need to properly segregate access to confidential information and prevent its review by in-house counsel. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-72 (9th Cir. 1992), *cert. denied, BB Asset Mgmt, Inc. v. Symantec Corp.*, 506 U.S. 869 (1992) (denying plaintiff's in-house counsel access to defendant's trade secret information where in-house counsel was responsible for advising employer on legal issues). Plaintiffs designated two in-house counsel would "have direct responsibility for this litigation" and therefore should not have access to Pentech's trade secrets. *See* Docket Entry 40-2 ([Proposed] Stipulated Protective Order) at ¶ 6(g)(i). Courts apply a balancing test, weighing the risk of inadvertent disclosure against the risk of impairing a party's litigation effort. *See Brown Bag Software,* 960 F.2d at 1470; *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1997 WL 603880, at *12 (N.D. Ill. Sept. 23, 1997). While parties seeking discovery are entitled to information "reasonably calculated to lead to the discovery of admissible evidence," responding parties are likewise entitled to protection from misuse of trade secrets by competitors. *See, e.g., Brown Bag Software*, 960 F.2d at 1470.

Although the confidential nature of information should not *per se* preclude its discovery, courts will limit unnecessary disclosure of sensitive information. *See, e.g., Davis v. General Motors Corp.*, 64 F.R.D. 420, 422 (N.D. Ill. 1974). Particularly in intellectual property cases, the need for disclosure of even highly relevant information to a competitor may be outweighed by the irreparable harm that can result to the disclosing party. *See, e.g., Autotech Techs. Ltd.*

*Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 412-14 (N.D. Ill. 2006); *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741-43 (Fed. Cir. 1987). In *Connetics v. Pentech* Judge Gottschall precluded plaintiffs' in-house from having access to Pentech's ANDA, as the court did in *Unigene v. Apotex*, 06-CV-5571. Silver Decl. at ¶¶ 3-12. Pentech's position here is even more compelling because here Pentech seeks to designate only the CMC section of the ANDA and related documents as "HIGHLY CONFIDENTIAL" – not the entire ANDA.

The scope of protective orders limiting attorneys' access to confidential information is governed by principles set down by the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984). The inquiry focuses on whether counsel is involved in "competitive decision-making" which is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel advice and participation in any or all of the client's decisions (pricing, product design, *etc.*) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n.3. "The sole question is whether there is an unacceptable risk of or opportunity for 'inadvertent disclosure' of confidential information." *Autotech Techs.*, 237 F.R.D. at 407.

"[In h]ouse counsel are subject to pressures different from those which outside counsel face, if only that their own economic well-being is inextricably bound up with their employer's." *Id.* (quoting *In re PPG Industries, Inc.*, 944 F.2d 912 (Fed. Cir. 1991)). Thus, proper analysis requires an inquiry into in-house counsel's actual role in the company's affairs, his/her relationship with competitive decision makers in the company, and any other factor that enhances the risk of inadvertent disclosure. *Id.* That risk must then be balanced against the harm that will result to the party employing in-house counsel from restrictions on the latter's access to the protected information. *U.S. Steel*, 730 F.2d at 1468; *Brown Bag Software*, 960 F.2d at 1470.

"Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create 'an unacceptable opportunity for inadvertent disclosure.'" *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 50 USPQ2d 1783, 1784 (D. Nev. 1998)

In denying plaintiffs' in-house counsel access to Pentech's trade secrets in *Connetics v. Pentech*, Judge Gottschall explained that in-house counsel's "duty of loyalty to [plaintiffs], as well as her own interest in seeing here employer prosper commercially, might very well put her in an ethically untenable position were she to have knowledge of Pentech's trade secrets that would be potentially commercially advantageous to her own employer. Silver Decl., Ex. 4 at p. 5. These same risks apply here. Judge Gottschall also found that plaintiffs had outside counsel to litigate the case (*Id.* at p. 6), as is the case here.

Plaintiffs' outside counsel will have access to Pentech's most closely-held trade secrets, which if revealed to Plaintiffs' in-house counsel, would provide access to the core of Pentech's pharmaceutical manufacturing and testing processes and, if inadvertently disclosed or used, would provide Plaintiffs with a significant competitive advantage, not only with respect to HECTOROL® but also other related products. *See Mikohn Gaming*, 50 USPQ2d at 1784. The dangers of misuse of Pentech's trade secrets could be devastating – and ultimately untraceable— and greatly outweigh any harm to Plaintiffs.

## IV.   CONCLUSION

Pentech respectfully requests that Plaintiffs' in house counsel not have access to Pentech's HIGHLY CONFIDENTIAL documents under the Stipulated Protective Order.

Respectfully submitted,

Dated: June 3, 2008         By    /s/ Mona Gupta
                                  Robert S. Silver

182961_1                                  5

Bruce J. Chasan
Mona Gupta
William J. Castillo
William C. Youngblood
CAESAR, RIVISE, BERNSTEIN,
 COHEN & POKOTILOW, LTD.
1635 Market Street, 11th Floor
Philadelphia, PA  19103
Telephone: (215) 567-2010
Facsimile: (215) 741-1142
*rssilver@crbcp.com*

and

Robert B. Breisblatt
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5480
 Facsimile: (312) 577-8792
*Robert.Breisblatt@kattenlaw.com*

*Attorneys for Defendant, Pentech Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June 2008, a true and correct copy of the foregoing **PENTECH'S BRIEF IN SUPPORT OF DESIGNATING CERTAIN PORTIONS OF ITS ANDA AS HIGHLY CONFIDENTIAL UNDER THE PROPOSED STIPULATED PROTECTIVE ORDER** is being electronically filed as well as mailed, via United States Postal Services, first class mail, postage prepaid in an envelope addressed to:

    Sarah R. Wolff
    Jennifer Yule DePriest
    REED SMITH LLP
    10 South Wacker Drive, 40th Floor
    Chicago, IL 60606-7507
    *swolff@reedsmith.com*
    *jdepriest@reedsmith.com*

        and

    Robert L. Baechtold
    Scott K. Reed
    Filko Prugo
    FITZPATRICK, CELLA, HARPER & SCINTO
    30 Rockefeller Plaza
    New York, NY 10112-3800
    *rbaechtold@fchs.com*
    *sreed@fchs.com*
    *fprugo@fchs.com*

                              /s/ Mona Gupta
                                Mona Gupta