**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONE CARE INTERNATIONAL LLC and GENZYME CORPORATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>PENTECH PHARMACEUTICALS, INC.,<br><br>*Defendant*. | Civil Action No.: 08-cv-1083<br><br>Honorable Robert M. Dow Jr.<br>Magistrate Judge Martin C. Ashman |

**BRIEF IN SUPPORT OF PLAINTIFFS' FORM OF
[PROPOSED] STIPULATED PROTECTIVE ORDER**

Plaintiffs Bone Care International LLC and Genzyme Corporation (collectively "Genzyme") submit this brief in support of their position that Defendant Pentech Pharmaceuticals, Inc.'s entire Abbreviated New Drug Application ("ANDA") No. 90-040 and all related documents should be designated as "CONFIDENTIAL." On May 23, 2008, the parties filed a joint motion and [Proposed] Stipulated Protective Order, Docket No. 40, which includes the language (annotated and in bold) currently in dispute between the parties. (*See* [Proposed] Stipulated Protective Order at ¶ 1.a, attached hereto as Exhibit 1.) The dispute is quite simple. Plaintiffs request that Defendant's entire ANDA and all related documents be designated as "CONFIDENTIAL" so as to allow Genzyme's in-house counsel access to this important and highly relevant information. (Plaintiffs' [Proposed] Stipulated Protective Order, which incorporates this position, is attached hereto as Exhibit 2.) Defendant, however, takes the position that the Chemistry, Manufacturing and Controls ("CMC") section of its ANDA (and related documents) should be designated as "Highly Confidential," thereby preventing Genzyme's in-house counsel from accessing this information. (*See* 05/22/08 Email from Def.'s Counsel, R. Silver, to Pls.' Counsel, F. Prugo, attached hereto as Exhibit 3.)[1] For the reasons

---

[1] According to Defendant's counsel, "Pentech is agreeable to the 2 [in-house counsel], with the reservation that those individuals could not see the CMC (Chemistry and Manufacturing Section) of the ANDA in this case and any documents related thereto."

discussed in greater detail below, the Court should grant Plaintiffs' [Proposed] Stipulated Protective Order.

### Genzyme Cannot Make Informed Decisions If In-House Counsel Is Precluded From Having Access to the CMC Section

Defendant has alleged its generic product does not infringe U.S. Patent No. 6,903,083 ("the '083 patent"). (*See* Def.'s Am. Answer to Compl., Affirmative Defenses and Countercls., Docket No. 32, Affirmative Defenses ¶ 4 ("[t]he '083 patent would not be infringed by a product made in accordance with ANDA No. 90-040 [Defendant's generic product]"); *Id*. at Countercls. ¶ 31.)

Furthermore, in its Notice Letter[2] Defendant asserted:

> In particular, each claim of the '083 patent specifies that the 1α-hydroxyvitamin $D_2$ be at least 98% pure and contains no single impurity greater than 0.5% on a weight basis by HPLC. At least one of the impurities in Pentech's ANDA product is more than 0.5% measured by a weight-based HPLC assay. Accordingly there is no literal infringement of any claim of the '083 patent since the limitation "no single impurity greater than 0.5%" is not met.

(*See* Pentech's Notice Letter, attached hereto as Exhibit 4 at 15.)

Information regarding the purity of Pentech's generic product will be contained in the CMC section of its ANDA and related documents. (*See* 21 C.F.R. § 314.50(d)(1) (April 1, 2007), attached hereto as Exhibit 5.) Without being able to disclose the relevant information to Genzyme in-house counsel, Genzyme cannot make informed decisions regarding this litigation and Genzyme's outside litigation counsel cannot properly advise their clients. In particular, Genzyme and outside litigation counsel will not be able to adequately discuss Defendant's assertion that it does not infringe the '083 patent. (*See* Aff. of Madge Shafmaster, Ph. D., at ¶¶ 9 - 11, attached hereto as Exhibit 6.) This assertion is clearly grounded in the CMC section's description of the "composition, manufacture, and specification" of Defendant's proposed generic product – the very section Defendant now tries to hide. (*See* 21 C.F.R. § 314.50(d)(1) (April 1, 2007), Ex. 5.)

---

[2] Under the Hatch-Waxman scheme (Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98 417, 98 Stat. 1585 ("Hatch Waxman")), a generic pharmaceutical company must give the patent owner written notice ("Notice Letter") of its ANDA filing and state the factual and legal bases it relies upon to establish that its product does not infringe the innovator's patent covering its drug product or that any such patent is invalid. 21 U.S.C. § 355(j)(2)(A)(vii)(IV) and § 355(j)(2)(B).

**Every Possible Safeguard Relating To In-House Counsel's
Access To "Confidential" Information Has Been Provided**

The restrictions stipulated to by the parties regarding in-house counsel's ability to access "Confidential" information minimizes the risk of inadvertent disclosure of such information.

First, the Protective Order contains safeguards as to the in-house counsel who can have access to "Confidential" information. Specifically, the Protective Order allows for the disclosure of "Confidential" information to "no more than two in-house counsel" who:

> i. have direct responsibility for this litigation;
> ii. do not have direct patent prosecution responsibility relating to subject matter(s) of this litigation and who will refrain from any such activities for a period of three (3) years after the termination of this litigation; and
> iii. are not competitive decision makers (*i.e.*, are not responsible for decisions relating to competitive business practices, such as pricing, product design or development, sales, or marketing)…

(*See* Protective Order at ¶ 6.g., Ex. 2.)

Second, the Protective Order also restricts when "Confidential" information can be disclosed to in-house counsel. Specifically, access by in-house counsel to "Confidential" information is restricted to four defined instances, each of which is related to the provision of legal advice related to this litigation, namely:

> …[1] if such documents are contained in or attached to documents filed or to be filed with the court (including drafts thereof), or [2] any document, pleading or brief in connection with any motion or other written submission filed or to be filed with the court (including drafts thereof), [3] if such documents are used or marked at deposition taken in connection with this case, or [4] if legal advice cannot be provided by counsel for a party without disclosure of the information contained in such a document.

(*See* Protective Order at ¶ 9., Ex. 2.)

And last, in-house counsel is required to "agree in writing to be bound by this Protective Order" and their identity be disclosed to opposing counsel before access to either "Confidential" or, in very limited and specifically-defined situations, "Highly Confidential" information can be permitted. (*See id*. at ¶¶ 8 and 10, Ex. 2.)

**Defendant's *Per Se* Prohibition Against In-House Counsel Having Access To
The CMC Section Or Related Documents Is Unreasonable**

The CMC section of an ANDA describes the "composition, manufacture, and specification" of the drug substance to be used in a generic drug product. (*See* 21 C.F.R.

3

§ 314.50(d)(1) (April 1, 2007), Ex. 5.)  This information is therefore critical to the litigation.  Yet Defendant refuses to allow Genzyme's in-house counsel access to its CMC section and related documents, which amounts to an unreasonable *per se* rule against in-house counsel ever having access to such information.

Such a rule has been rejected by the Federal Circuit, which under circumstances similar to those presented here, held that "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party … must govern any concern for inadvertent or accidental disclosure" of confidential information.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  In *U.S. Steel*, the Court vacated and remanded a decision of the Court of International Trade denying in-house counsel access to certain confidential information based solely on the "classification of counsel as in-house rather than retained."  *See id*.  It is a counsel's "involvement in 'competitive decisionmaking,'" defined as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor," that is the appropriate factor to consider.  *Id*. at n.3; *see also Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991) (citing the standards set forth in *U.S. Steel*).  The parties' stipulated Protective Order incorporates these very guidelines.  (*See* Protective Order at ¶ 6.g., Ex. 2.)  In particular, the parties' stipulated Protective Order makes clear that in-house counsel afforded access to this "Confidential" information cannot be "competitive decision makers (*i.e.*, are not responsible for decisions relating to competitive business practices, such as pricing, product design or development, sales, or marketing)."  (*See id.* at ¶ 6.g.iii, Ex. 2.)  Accordingly, there is no valid reason why Genzyme's in-house counsel should not have access to Defendant's CMC and related documents.

## Conclusion

Defendant's ANDA, including the CMC section and related documents, should be designated "Confidential" so that Genzyme's in-house counsel may have access to this highly relevant information and effectively participate in the substantive decisions that must be made during the litigation.  Further, the Protective Order affords every possible safeguard to prevent the inadvertent disclosure of such information.  Finally, Defendant's refusal to allow Genzyme's in-house counsel access to its CMC section and related documents amounts to an unreasonable

*per se* rule against in-house counsel ever having access to such information, and prevents Genzyme from making informed decisions regarding information relevant to this litigation.

Plaintiff Genzyme respectfully requests that the Court issue the [Proposed] Stipulated Protective Order in the form attached hereto as Exhibit 2. If however the Court adopts Defendant's position, Plaintiffs request that that Court designate Plaintiffs' CMC section and related documents as "Highly Confidential," as that information is equally sensitive.

Respectfully submitted,

/s/ Raven Moore
Sarah R. Wolff (Bar No. 3123733)
Jennifer Yule DePriest (Bar No. 6272137)
Raven Moore (Bar No. 6280665)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
rmoore@reedsmith.com

Robert L. Baechtold (admitted pro hac vice)
Scott K. Reed (admitted pro hac vice)
Filko Prugo (admitted pro hac vice)
Fiona E. Darkin (admitted pro hac vice)
Daniel J. Minion (admitted pro hac vice)
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York 10112-3800
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

  The undersigned attorney certifies that she served a true and correct copy of the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' FORM OF [PROPOSED] STIPULATED PROTECTIVE ORDER** on each counsel of record listed below via ECF email notification on this 3rd day of June, 2008:

| | |
|---|---|
| Robert B. Breisblatt<br>KATTEN MUCHEN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, IL 60661 | Robert S. Silver<br>Bruce J. Chasan<br>Mona Gupta<br>William J. Castillo<br>William C. Youngblood<br>CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.<br>1635 Market Street, 11th Floor<br>Philadelphia, PA 19103 |

             */s/ Raven Moore*
             Raven Moore

FCHS_WS 2185744_1.DOC