**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BONE CARE INTERNATIONAL LLC and GENZYME CORPORATION,** | ) ) ) | **Civil Action No.: 08-cv-1083** |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| **PENTECH PHARMACEUTICALS, INC.,** | ) ) ) | **Honorable Robert M. Dow Jr. Magistrate Judge Martin C. Ashman** |
| *Defendant*. | ) ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' FORM OF**
**[PROPOSED] STIPULATED PROTECTIVE ORDER**

Plaintiffs Bone Care International LLC and Genzyme Corporation (collectively "Genzyme") submit this reply brief in support of entry of a [Proposed] Stipulated Protective Order in the form submitted as Docket No. 51-3 (the "Protective Order"). Genzyme's form of order would designate as "Confidential" the Chemistry, Manufacturing and Controls ("CMC") section of defendant Pentech Pharmaceuticals, Inc.'s ("Defendant") Abbreviated New Drug Application ("ANDA") No. 90-040 and all related documents in accord with the language of ¶ 1.a. of the Protective Order.[1] As set forth in Plaintiff's Opening Brief as well as the affidavits attached hereto, it is critical that Plaintiffs' in-house counsel have access to the CMC section of the ANDA (and related documents) in order to make informed decisions about the litigation, particularly Defendant's position that it does not infringe U.S. Patent No. 6,903,083. *See* Plaintiffs' Opening Brief at 2, Docket No. 51, hereafter "Pls.' Br. at __"; Affidavit of Bart G. Newland ("Newland Aff."), attached hereto as Ex. 1, ¶¶ 12-13; Affidavit of Madge Shafmaster, Ph.D. ("Shafmaster Aff."), attached hereto as Ex. 2, ¶¶ 13-14.)

The critical factor here is whether in-house counsel is involved in "competitive decision-making." (*See* Defendant's Opening Brief at 5, Docket No. 50, hereafter "Def.'s Br. at __"; *see also* Pls.' Br. at 4.) Both the facts and the law make clear that this factor weighs heavily in favor

---

[1] The only disputed language is the last clause of Paragraph 1.a. (*See* Pls.' Br. at 1.)

of Genzyme's form of order.  Defendant's principal objection, that inadvertent disclosure would provide Genzyme with "a significant competitive advantage, not only with respect to HECTOROL® but also related products" (Def.'s Br. at 5), is confusing and unsupported by the record.  Accordingly, Defendant's CMC section and related documents should be accessible to Genzyme's in-house counsel.

## ARGUMENT

Defendant's allegations that inadvertent disclosure of its "trade secrets" could provide Genzyme with a significant competitive advantage are wholly unsupported.  Although Defendant acknowledges there should not be a *per se* rule, Defendant never suggests what, if any, additional safeguards are needed.  Unlike the unrelated cases identified in Mr. Silver's Declaration and attached exhibits, the parties here have already incorporated into the Protective Order all of the appropriate legal and ethical considerations necessary to prevent any disclosure of "Confidential" information, inadvertent or otherwise.

### Neither The Case Law Nor Proceedings In Defense Counsel's Unrelated Cases Support Defendant's Position In This Fact-Based Inquiry

Neither the case law Defendant relies upon, nor its citation to unrelated proceedings involving different parties, issues and facts, support designating the Defendant's CMC section and related documents here as "Highly Confidential."

*First*, Defendant's reliance on *Brown Bag Software v. Symantec Corporation* is misplaced.  (*See* Def.'s Br. at 3 (citing 960 F.2d 1465 (9th Cir. 1992).)  In that case, in-house counsel sought "unfettered" access to all discovery documents.  *Id*. at 1472.  As explained in Plaintiffs' Opening Brief, such is not the case here:  "Confidential" information will only be accessible to in-house counsel under very limited circumstances relating to the provision of legal advice.  (*See* Pls.' Br. at 3.)  Furthermore, the *Brown Bag* court, following an evidentiary hearing by the Magistrate Judge, found that "none of the trade secrets were themselves relevant to Brown Bag's 'look and feel' infringement claim."  960 F.2d at 1471.  Again, that is not the case here, where Defendant's CMC section and related documents contain information directly relevant to Genzyme's infringement claims.  (*See, e.g.,* Pls.' Br. at 2).[2]

---

[2] Defendants overstate *Brown Bag*'s holding, claiming that the court denied "plaintiff's in-house counsel access to defendant's trade secret information where in-house counsel was responsible for advising employer on legal issues."  (*See* Def.'s Br. at 3.)  Such a holding would amount to a *per se* prohibition

2

*Second*, Defendant's reliance on Judge Gottschall's May 29, 2008 Order in *Connetics Corp. v. Pentech*, Case No. 07-6297, is similarly inapplicable.  (*See* Silver Decl., Docket No. 50-2, at Ex. 4, hereafter "*Connetics* Order.")

To begin, Defendant takes the position that Plaintiffs' in-house counsel should not have access to Pentech's trade secrets because they "would have direct responsibility for this litigation …."  (*See* Def.'s Br. at 3 (internal quotations omitted).)  But this "direct responsibility" did not form the basis of Judge Gottschall's ruling.  Indeed, Judge Gottschall found that "Sen's [in-house counsel] responsibility for working with outside counsel to manage the course of Stiefel's litigation . . . does not appear to pose a significant risk of inadvertent disclosure of Pentech's trade secrets."  (*See Connetics* Order at 5.)

Judge Gottschall's decision was based on facts not present here, as it was based on the fact that Sen's duties included "working with and advising … 'individuals involved in business development, research and development, and marketing regarding the procurement of patent and trademark rights'", which gave rise to a duty "to advise Stiefel's decision makers concerning business development and marketing."  According to Judge Gottschall, it was these duties that put Sen "within the ambit of 'competitive decisionmaking,' as set forth in *U.S. Steel* …." (*Connetics* Order at 5-6, *quoting U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).)  In sharp contrast, neither Madge Shafmaster nor Bart Newland serve as a competitive decision-maker for Hectorol® or related products.  Additionally, neither will be advising business development (*i.e.*, pricing, product design, sales), research and development or marketing decision-makers regarding the procurement of patent rights relating to Hectorol® or related products for the duration of this action and for three years after its termination.  (*See* Newland Aff., ¶¶ 9 and 10; Shafmaster Aff., ¶¶ 10 and 11.)[3]  In light of these distinguishing circumstances, just as Judge Gottschall accepted Sen's sincere assurances that she would abide

---

against in-house counsel having access to trade secrets.  There is no other reason a company would employ in-house counsel than to obtain advice on "legal issues."

[3] Moreover, neither Madge Shafmaster nor Bart Newland is directly responsible for providing trademark advice concerning Hectorol® or related products to Genzyme decision-makers.  (*See* Newland Aff., ¶ 11; Shafmaster Aff., ¶ 12).

the terms of the protective order, it would be appropriate to credit here Genzyme's in-house counsel's similar representations.  (*See* Newland Aff. ¶ 14; Shafmaster Aff. ¶ 15.)[4]

*Last*, the relevance of *Unigene Laboratories, Inc. v. Apotex, Inc.* is questionable at best. The thrust of the controversy in that case centered on the fact that Apotex's former outside trial attorney began working at Unigene's "outside counsel's" (acting as "in-house counsel") law firm.  (*See* Silver Decl., Ex. 5 at 2-3.)  That fact pattern does not apply here.

In sum, the facts, circumstances and precautions in this case are a far cry from those set forth in Defendant's Opening Brief and accompanying declarations and exhibits, and warrant designation of the CMC portion of the ANDA (and related documents) as "Confidential."

## Defendant's Allegations Of Harm Are Unsupported

Defendant's CMC section and related documents disclose its processes for manufacturing and testing the active pharmaceutical ingredient ("API") and the final doxercalciferol containing product that is the subject of its ANDA.  (*See* Def.'s Br. at 2.)  Defendant alleges that disclosure of this information would provide Genzyme with a "significant competitive advantage, not only with respect to HECTOROL® but also other related products."  (*See id.* at 5.)  Defendant makes no effort to explain precisely what "competitive advantage" Genzyme could possibly gain with either Hectorol® or some other unidentified product.  There is no explanation given as to why the information is so extremely valuable that it would make Genzyme both (1) jettison its FDA-approved processes for manufacturing and testing, and (2) undertake the regulatory and manufacturing work necessary to make such a change.  Indeed, the risk of any company undertaking such a course of action is low – a fact recognized by Genzyme's willingness to designate as "Confidential" the CMC section from its own NDA (should Defendant likewise agree to so designate the CMC portion of its ANDA).

---

[4] It is noteworthy to compare the extra burdens on in-house counsel here, *see* Protective Order at ¶ 6.g., to the lack of such limitations in the *Connetics* Protective Order, *see*, *e.g.*, Silver Decl., Ex. 1 at ¶ 9.a.5, particularly the lack of any explicit prohibitions on in-house counsel's patent prosecution activities.

## Conclusion

For the reasons expressed above and in Genzyme's Opening Brief, Genzyme respectfully requests that the Court issue the [Proposed] Stipulated Protective Order in the form submitted as Docket No. 51-3.

Dated:  June 10, 2008

Respectfully submitted,


*/s/ Jennifer Yule DePriest*
Sarah R. Wolff (Bar No. 3123733)
Jennifer Yule DePriest (Bar No. 6272137)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jdepriest@reedsmith.com

Robert L. Baechtold (admitted pro hac vice)
Scott K. Reed (admitted pro hac vice)
Filko Prugo (admitted pro hac vice)
Fiona E. Darkin (admitted pro hac vice)
Daniel J. Minion (admitted pro hac vice)
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York 10112-3800
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2008, a copy of the foregoing **Reply Brief In Support of Plaintiffs' Form of [Proposed] Stipulated Protective Order** was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Jennifer Yule DePriest*
Jennifer Yule DePriest