**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BONE CARE INTERNATIONAL, LLC ) <br> and GENZYME CORPORATION, ) <br> ) <br> Plaintiffs, ) <br> ) Case No. 08 c 1083 <br> v. ) <br> ) <br> PENTECH PHARMACEUTICALS, INC., ) <br> ) <br> Defendant. ) | |

**ORDER ON DISPUTE CONCERNING
TERMS OF PROTECTIVE ORDER**

Although the parties to this litigation have agreed to most of the terms of a protective order, they have been unable to reach agreement on the designation of the Chemistry, Manufacturing and Controls ("CMC") section of Defendant's Abbreviated New Drug Application ("ANDA") and sections of Plaintiff's New Drug Application of equivalent sensitivity, and documents related to each. When the parties reached a stalemate, they requested an opportunity to submit briefs so that the Court could assist in resolving the dispute. The Court has reviewed those briefs [50, 51, 53, 54] and directs the parties to submit a proposed stipulated protective order consistent with the rulings set forth in this opinion.

**I.   Background**

The dispute here is straightforward. Plaintiffs Bone Care International, LLC and Genzyme Corporation ("Plaintiffs") contend that Defendant Pentech Pharmaceutical, Inc.'s ("Defendant") entire ANDA and all related documents should be designated as "Confidential" so that Plaintiffs' in-house counsel may have access to those documents. Defendant counters that

the CMC section of the ANDA (and related documents) should be designated as "Highly Confidential," which would prohibit in-house counsel from accessing the documents.

In support of its position, Defendant states that the ANDA and related documents "disclose some of [its] most closely-held and valuable trade secrets." Nevertheless, Defendant has agreed to allow two of Plaintiffs' in-house counsel to have access to most of the ANDA. However, Defendant has objected to allowing Plaintiffs' in-house counsel to see the CMC and related documents on two grounds. First, Defendant contends that in-house counsel has no need to see the trade secrets in the CMC because Plaintiffs have retained outside counsel to handle the litigation. Second, Defendant argues that the risk of inadvertent disclosure of protected information by the designated in-house counsel significantly outweighs any impairment of Plaintiffs' litigation efforts that would occur if the CMC and related documents were disclosed only to outside counsel. Plaintiffs reject both of those contentions, arguing that in-house counsel must have access to the CMC in order to make informed decisions about the litigation and that the agreed terms of the proposed protective order provide ample protection from the risk of inadvertent disclosure that could harm Defendant's competitive position.

**II.    Analysis**

The parties agree that this Court has broad discretion in fashioning appropriate protective orders (*Amsted Indus., Inc. v. National Castings, Inc.*, 1988 WL 90022, at *1 (N.D. Ill. Aug. 22, 1988)), and may enter a protective order that prohibits "trade secret or other confidential research, development or commercial information" from being revealed or permits such information to be "revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). Defendant essentially requests that the Court prohibit information concerning the CMC portion of the ANDA from being revealed to Plaintiffs' in-house counsel altogether, while Plaintiffs contend

that the documents in question should be revealed "in a designated way" under the protective order.

The parties point to the Federal Circuit's decision in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), as the leading authority on the factors that a court should consider in deciding whether and to what extent a protective order may limit the access of in-house attorneys to confidential information. Under *U.S. Steel*, the touchstone is whether in-house counsel is "*involved in competitive decisionmaking*," which the court described as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel in advice and preparation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id*. at 1468 & n.3 (emphasis added). When in-house counsel is "involved in competitive decisionmaking," courts must determine whether "an unacceptable opportunity for inadvertent disclosure exists" (*id*. at 1468), because in-house counsel who has knowledge of a competitor's trade secrets may be unable to "lock-up [those] trade secrets in his mind" when rendering legal advice to his employer. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1991). In making that determination on a "case-by-case and counsel-by-counsel" basis (see *Connetics Corp. v. Pentech Pharmaceuticals, Inc.*, No. 07 c 6297, Order at 3 (N.D. Ill. June 3, 2008)), courts must balance the risk of inadvertent disclosure against the risk that protection of the trade secrets will impair the ability of in-house counsel's client to prosecute or defend the case (see *Brown Bag Software*, 960 F.2d at 1470).

Here, Plaintiffs make a convincing case that the information about the "composition, manufacture, and specification" of Defendant's product contained in the CMC section of the ANDA is highly relevant to this case, given Defendant's contention that its product does not

3

infringe Plaintiffs' patent.  Given the importance of the CMC section and related documents to the litigation, the Court is reluctant to forbid Plaintiffs' in-house counsel from access to those documents, provided that the protective order adequately addresses Defendant's legitimate concerns about risk of inadvertent disclosure.[1]  Accordingly, the Court rules that the CMC section of the ANDA (and Plaintiffs' documents of similar sensitivity) should be designated as "Confidential," not as "Highly Confidential."

However, the Court is not convinced that the draft protective order is sufficiently broad to reflect the full measure of protection to which Defendant is entitled under the case law in the event that Plaintiffs' in-house lawyers receive access to the CMC and related documents.  As currently drafted, the protective order only limits access to confidential information to in-house counsel who are "not competitive decision makers," which appears to leave open the possibility that in-house counsel who are "involved in competitive decisionmaking,' but who are not themselves "competitive decision makers," may have access to trade secrets.  To be consistent with prevailing law and to provide adequate protection against inadvertent disclosure, Paragraph 6.g. of the draft protective order should be revised to allow disclosure only to in-house counsel who "are not involved in competitive decisionmaking (*i.e.*, are not working closely with or advising those at the company who are responsible for decisions relating to competitive business practices, such as pricing, product design or development, sales, or marketing)."

The Court offers no opinion at this time on which in-house counsel (if any) can satisfy that standard for avoiding a risk of inadvertent disclosure.  Plaintiffs attached to their initial brief the affidavit of an in-house lawyer, Dr. Madge Shafmaster.  But based on the statements in Dr.

---

[1] The Court does not consider the facts that (i) Plaintiffs have retained outside counsel and (ii) that Defendant lacks an in-house legal department as weighing heavily against permitting Plaintiffs' in-house counsel to have access to the documents as long as there are adequate safeguards in place.

4

Shafmaster's affidavit, the Court cannot offer any views at this time on whether Dr. Shafmaster is "involved in competitive decisionmaking." While the Court accepts Dr. Shafmaster's pledge to abide by the terms of the protective order, the Court agrees with Judge Gottschall's recent observation that an assurance of that kind "marks the beginning, not the end, of the analysis, because the issue is not one of good faith, but rather one of inadvertent disclosure." *Connetics Corp.*, No. 07 c 6297, Order at 5. And on that issue, the Court simply does not have sufficient information about the role at the company of Dr. Shafmaster (or any of Plaintiffs' in-house lawyers) to render a decision. That issue remains open for the parties to resolve consistent with the applicable federal and local rules.

### III.  Conclusion

As explained above, the Court rules (i) that the CMC section of the ANDA (and Plaintiffs' documents of similar sensitivity) should be designated as "Confidential," not as "Highly Confidential" and (ii) that paragraph 6.g. of the draft protective order should be revised to allow disclosure only to in-house counsel who "are not involved in competitive decisionmaking (*i.e.*, are not working closely with or advising those at the company who are responsible for decisions relating to competitive business practices, such as pricing, product design or development, sales, or marketing)." The Court directs the parties to work together to submit a protective order consistent with those rulings within seven days of the entry of this Order.

Dated:  July 28, 2008                  _____
                                        Robert M. Dow, Jr.
                                        United States District Judge