**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BONE CARE INTERNATIONAL LLC and GENZYME CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 08-cv-1083 |
| v. | ) ) | Honorable Robert M. Dow Jr. |
| PENTECH PHARMACEUTICALS, INC. and COBREK PHARMACEUTICALS, INC., | ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE PLAINTIFFS' ASSERTION OF SECONDARY
CONSIDERATIONS OR TO RE-OPEN FACT DISOVERY**

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT ....................................................................................................................1

    1.    Secondary Considerations Explained ....................................................1

    2.    Pentech Has Long Had Notice Of Genzyme's Intention To
            Assert Secondary Considerations During Expert Discovery ...................................3

    3.    Pentech Is Not Prejudiced In Any Way By
            Genzyme's Assertion Of Secondary Considerations ..............................................5

    4.    Genzyme Had No Obligation To Assert Its Specific
            Secondary Considerations In September 2008 .......................................................7

CONCLUSION...............................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953 (Fed. Cir. 1997) .............................. 5

*B. Braun Med. Inc. v. Abbott Labs*, 155 F.R.D. 525 (E.D. Pa. 1994) ........................................... 8

*BASF Catalysts LLC v. Aristo, Inc.*, No. 2:07-cv-222,
    2009 U.S. Dist. LEXIS 4780 (N.D. Ind. Jan. 23, 2009) ..................................... 8

*David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003) ........................................................ 8

*Eisai Co. v. Teva Pharms. USA, Inc.*, 03-9223 (GEL),
    2006 U.S. Dist. LEXIS 73516 (S.D.N.Y. Oct. 6, 2006) ..................................... 6

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ....................................................... 2, 3

*Int'l Truck and Engine Corp. v. Caterpillar, Inc.*,
    73 U.S.P.Q.2D (BNA) 1754 (N.D. Ind. 2004) .................................................... 8

*KSR Int'l v. Teleflex Inc.*, 550 U.S. 398 (2007) ...................................................... 3, 5

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
    348 F. Supp. 2d 713 (N.D. W.Va. 2004) ...................................................... 5

*Pfizer, Inc. v. Apotex, Inc.*, 488 F.3d 1377 (Fed. Cir. 2007) ........................................... 5

*Reiner v. I. Leon Co.*, 285 F.2d 501 (2d Cir. 1960) ...................................................... 2

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983) ............................... 3

*W.L. Gore & Assocs., Inc. v Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983).................... 5

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, No. 04-cv-0346,
    2009 U.S. Dist. LEXIS 54471 (N.D. Ill. Jun. 26, 2009) ..................................... 3

*Ziemack v. Centel Corp.*, No. 92 C 3551,
    1995 U.S. Dist. LEXIS 18192 (N.D. Ill. Dec. 6, 1995) ..................................... 7

**Statutes**

35 U.S.C. § 103 ................................................................................................... 2, 3

## INTRODUCTION

Plaintiffs Bone Care International LLC and Genzyme Corporation (collectively, "Genzyme") oppose Defendants Pentech Pharmaceuticals, Inc.'s and Cobrek Pharmaceuticals, Inc.'s (collectively, "Pentech") motion to prevent Genzyme from asserting secondary considerations in support of the non-obviousness of its U.S. Patent No. 5,602,116 ("'116 patent") or, alternately, to re-open fact discovery to address those secondary considerations.  This motion is yet another transparent, improper attempt by Pentech to re-open fact discovery and waste judicial and litigant resources.  Pentech has long had notice of Genzyme's intention to assert secondary considerations of non-obviousness, and to do so during expert discovery.  While Pentech characterizes Genzyme's assertion of secondary considerations as "belated" and a "surprise," it is in fact early: as the parties agreed, such secondary considerations are matters for upcoming expert discovery, and Pentech will have ample opportunity to rebut them at that time.  Finally, Genzyme had no prior obligation to disclose its secondary considerations – and certainly not before the start of fact discovery, as Pentech suggests.  In sum, Genzyme's assertion of secondary considerations is proper, and Pentech has not been prejudiced by that assertion.  Its motion should be denied.

## ARGUMENT

### 1.   Secondary Considerations Explained

A patent claim is invalid for obviousness:

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a).  In *Reiner v. I. Leon Co.*, 285 F.2d 501 (2d Cir. 1960), Judge Learned Hand

explained that patent obviousness is properly measured from the objective standpoint of the

statutory "person having ordinary skill in the art":

> [Section 103] directs us to surmise what was the range of
> ingenuity of a person "having ordinary skill" in the "art"
> with which we are totally unfamiliar.... To judge on our
> own that this or that new assemblage of old factors was, or
> was not, "obvious" is to substitute our ignorance for the
> acquaintance with the subject of those who were familiar
> with it.

285 F.2d at 503-4.  Sixteen years later, in its landmark decision of *Graham v. John Deere Co.*,

383 U.S. 1 (1966), the Supreme Court set forth the factual inquiries underlying a determination

of obviousness:

> [Section 103] lends itself to several basic factual inquiries.
> Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the
> claims at issue are to be ascertained; and the level of
> ordinary skill in the pertinent art resolved.  Against this
> background, the obviousness or nonobviousness of the
> subject matter is determined.

383 U.S. at 17.  The Court also stated that certain "secondary considerations" of non-

obviousness may be relevant to an obviousness determination:

> Such secondary considerations as commercial success, long
> felt but unresolved needs, failure of others, etc., might be
> utilized to give light to the circumstances surrounding the
> origin of the subject matter sought to be patented.  As
> indicia of obviousness or nonobviousness, these inquiries
> may have relevancy.

383 U.S. at 17-18.  Citing Judge Learned Hand's *Reiner* decision with approval, the Supreme

Court emphasized the importance of these secondary considerations:

> [They] focus attention on economic and motivational rather
> than technical issues and are, therefore, more susceptible of
> judicial treatment than are the highly technical facts often
> present in patent litigation....

>Such inquiries may lend a helping hand to the judiciary
>[and] may also serve to "guard against slipping into use of
>hindsight" [and] to resist the temptation to read into the
>prior art the teachings of the invention in issue.

383 U.S. at 35-36 (internal citations omitted).

Since the time of *Reiner* and *Graham*, secondary considerations of non-obviousness – also known as "objective indicia"– have come to be regarded as important factors that must be considered in determining whether or not a patent is obvious under 35 U.S.C. § 103. *KSR Int'l v. Teleflex Inc.*, 550 U.S. 398, 415 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, No. 04-cv-0346, 2009 U.S. Dist. LEXIS 54471 at **69 (N.D. Ill. Jun. 26, 2009). These secondary considerations include commercial success, unexpected results, long-felt need, failure of others, copying and expert skepticism. *Graham*, 383 U.S. at 17-18.

### 2. Pentech Has Long Had Notice Of Genzyme's Intention To Assert Secondary Considerations During Expert Discovery

Genzyme has asserted unexpected results, long-felt need, failure of others, copying and expert skepticism in support of the non-obviousness of the '116 patent. (Pentech Exh. C, p. 3). However, it is Pentech's initial burden, as the party challenging Genzyme's patent, to establish a *prima facie* case of obviousness based upon the scope and content of the prior art; the differences between the prior art; and the level of ordinary skill in the pertinent art. *Wm. Wrigley Jr. Co.,* 2009 U.S. Dist. LEXIS 54471 at **54-55. If Pentech presents a case of *prima facie* obviousness, it then becomes Genzyme's burden, if it chooses, to establish secondary considerations of non-obviousness, at which time Pentech may explore or rebut those secondary considerations. *Id.*

Pentech has long known that Genzyme has been contemplating asserting such secondary considerations of non-obviousness, and that Genzyme believed the appropriate time to do so was during expert discovery.

Before Genzyme even filed suit, Pentech had addressed secondary considerations, including unexpected results, long-felt need, failure of others, copying and expert skepticism, in its January 8, 2008 notice letter to Genzyme.  (Loh Decl. Exh. A, pp. 13-14, 20).  Pentech cannot plead ignorance of the importance of those secondary considerations.  Shortly after Genzyme sued Pentech, the parties met in March and April 2008 to discuss scheduling, and confirmed in their Joint Rule 26(f) Report that Genzyme would assert secondary considerations, "*including*" – but not limited to – commercial success, in Genzyme's responsive expert reports.[1]  (Docket No. 24; Pentech Exh. F, p. 3).  Subsequently, on August 1, 2008, Genzyme objected to Pentech's Interrogatory No. 6, which seeks Genzyme's secondary considerations, on the ground that it prematurely sought expert testimony, and reserved the right to supplement its secondary considerations.  (Loh Decl. Exh. B, pp. 2, 11-12).  This objection was repeated in Genzyme's September 26, 2008 supplemental response, which asserted unexpected results with respect to Genzyme's U.S. Patent No. 6,903,083 ("'083 patent") and copying with respect to both the '083 and '116 patents, and again in Genzyme's June 26, 2009 supplemental response, which asserted unexpected results, long-felt need, failure of others and expert skepticism.  (Pentech Exh. B, p. 2; Pentech Exh. C, p. 3).  Tellingly, Pentech *never* sought to challenge Genzyme's repeated "expert

---

[1]     Pentech claims not only to have been prejudiced by Genzyme's asserted secondary considerations, but also to have been misled by Genzyme's failure to assert the secondary consideration of commercial success.  (Pentech Br., pp. 5, 7).  However, Pentech fails to mention that the parties never agreed to limit secondary considerations solely to commercial success, and that Genzyme never relinquished its right to rely upon other secondary considerations.  It is also undisputed that Pentech throughout the case has acknowledged and addressed other secondary considerations, including unexpected properties.  (Pentech Exh. G, p. 32).  Pentech has no means to argue otherwise except by discrediting the work of its own attorney, Mr. Stevenson.  (Pentech Br., pp. 7-8).

testimony" objections to Pentech's Interrogatory No. 6 – though it did so immediately with

regard to Genzyme's "expert testimony" objection to Pentech's Interrogatory No. 5.  (Pentech

Exh. A, p. 2).

The record is clear that Pentech has long understood the importance of secondary

considerations to this litigation, and has long had notice of the fact that Genzyme would assert

secondary considerations, and that it would do so during expert discovery.  Despite Genzyme's

repeated objections that secondary considerations were matters for expert discovery, Pentech has

never before challenged those objections.  Pentech has not been "surprised"; it was not

"ambushed."

**3.    Pentech Is Not Prejudiced In Any Way By
        Genzyme's Assertion Of Secondary Considerations**

Pentech has not been prejudiced by Genzyme's June 26, 2009 assertion of

secondary considerations.  It is well-settled that secondary considerations, along with other

evidence of non-obviousness, must be evaluated from the objective standpoint of the

hypothetical "person of ordinary skill in the art"[2]; accordingly, the subjective views of patentees

regarding the non-obviousness of their patents are irrelevant.[3]   Pentech's complaint that it has

---

[2]    *See, e.g., KSR Int'l,* 550 U.S. at  420.  ("The question is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art."); *W.L. Gore & Assocs., Inc. v Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed. Cir. 1983) ("The decision maker must step back in time to before the moment of actual invention, and out of the actual inventor's shoes into those of a hypothetical, ordinary skilled person who has never seen the invention.")(emphasis added).

[3]    *See, e.g., Arkie Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 957 (Fed. Cir. 1997) ("so-called 'secondary considerations' provide evidence of how the patented device is viewed by the interested public: not the inventor, but persons concerned with the product in the objective arena of the marketplace"); *Pfizer, Inc. v. Apotex, Inc.,* 488 F.3d 1377, 1383 (Fed. Cir. 2007) (improper to evaluate unexpected results based on inventor's expectations); *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,* 348 F. Supp. 2d 713, 759 (N.D. W.Va. 2004) ("In the context of secondary considerations, the Federal Circuit has generally-focused on the prior failures of others in the industry, not the inventors."); *Eisai Co. v. Teva Pharms. USA, Inc.,* 03-9223 (GEL),

been deprived of an opportunity to obtain additional fact discovery from Genzyme regarding the asserted secondary considerations, or to depose the '116 patent's inventors on those secondary considerations, thus is groundless.  As a matter of law, neither Genzyme nor the inventors can offer Pentech anything of use on the subject of the asserted secondary considerations.

And as a matter of fact, the asserted secondary considerations – unexpected results, long-felt need, failure of others, copying, expert skepticism – by nature depend upon information more suitably obtained from experts.  Indeed, such matters can be established only through a comprehensive study of the state of the art by experts, not through depositions of fact witnesses unprepared to discuss such matters.  It is indisputable that obviousness is evaluated from the standpoint of the hypothetical "person of ordinary skill in the art" who, unlike **any** fact witness, is presumed to be aware of ***all the pertinent prior art***.  (Loh Decl. Exh. A, p. 13).

Pentech merely speculates otherwise.  For example, Pentech speculates that "there might well have been interrogatories requesting identification of the experts in the field who allegedly were surprised by the claimed invention, and who were the others who failed, as well as further inquiries into the alleged efficacy and safety of the invention relative to other pharmaceuticals."  (Pentech Br., p. 6).  Those "experts" and "others" who were surprised, who failed, and who made and tested "other pharmaceuticals" will be identified, and the efficacy and safety of the invention will be fully explored, in Genzyme's expert reports.  Such information cannot be ascertained piecemeal through endless fact witness depositions, as Pentech suggests.  Pentech further speculates that "there certainly would have been fact depositions of some of the physicians who did clinical trials with 1α-hydroxy vitamin $D_2$ for Bone Care."  *Id.*  But the

---

2006 U.S. Dist. LEXIS 73516 at *10, n. 3 (S.D.N.Y. Oct. 6, 2006) ("The Court disregards the various factual assertions of both parties regarding actions, methods or goals of the *actual* inventor....Eisai's subjective circumstances are irrelevant to the time-frozen, objective obviousness inquiry.").

physicians' subjective interpretation of their own results is irrelevant to an objective

determination of whether or not the '116 patent is non-obvious.

Indeed, as the parties agreed during the negotiations over their Joint Rule 26(f)

Report, secondary considerations of non-obviousness are matters to be addressed by the parties'

experts, not fact witnesses.  Pentech does not deny this.  (Pentech Br., p. 7).  And expert

discovery in this case has not yet begun: pursuant to the Court's orders, opening expert reports

are due by August 7, 2009, responsive reports by September 25, 2009, and reply reports by

October 30, 2009; expert depositions begin by November 9, 2009, and end on December 21,

2009.  (Docket Nos. 150, 175).  Under this schedule, Pentech still has two months to retain any

"additional experts" it may need before having to address Genzyme's secondary considerations

in its reply expert reports.  Pentech will have a full six weeks thereafter to depose Genzyme's

experts on those secondary considerations.  Pentech thus will have ample opportunities during

expert discovery to explore and rebut Genzyme's asserted secondary considerations.  It has not

been prejudiced.

### 4.      Genzyme Had No Obligation To Assert Its Specific Secondary Considerations In September 2008

Finally, Pentech's suggestion that Genzyme was obligated to set forth each and

every one of its specific secondary considerations at the very start of fact discovery in September

2008 is nonsensical.  It is well-settled that the parties should take the time necessary to formulate

and to develop their contentions before disclosing them.  *Ziemack v. Centel Corp.*, No. 92 C

3551, 1995 U.S. Dist. LEXIS 18192 at *5 (N.D. Ill. Dec. 6, 1995) ("The basic premise of a

contention interrogatory is to require a party to commit to a position and to give support for that

position....In the interest of judicial economy and fairness, the answers to contention

interrogatories often are delayed until the end of discovery."); *BASF Catalysts LLC v. Aristo,*

*Inc.*, No. 2:07-cv-222, 2009 U.S. Dist. LEXIS 4780 at **5-6 (N.D. Ind. Jan. 23, 2009) (same); *B. Braun Med. Inc. v. Abbott Labs*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (denying plaintiff's motion to compel responses to contention interrogatories; "if Defendants are forced to respond, they may have to articulate theories of their case not yet fully developed.").[4]   The Court previously agreed with Genzyme on this point, having scheduled the supplementation of interrogatory responses on June 26, 2009, after the June 18, 2009 close of fact discovery.  (Docket No. 150).

Pentech itself took advantage of this opportunity to supplement its discovery responses following the close of fact discovery, adding extensive new allegations of patent invalidity in its own June 26, 2009 interrogatory responses.  (*See, e.g.,* Pentech Exh. G, pp. 4-5, citations to Reeve, Catto, Paaren, Tougaard; p. 10, citations to Massry, Nordal, Fukushima, Manji; p. 13, citations to Hughes, Silver, Dietel, Russell; pp. 26-31; pp. 33-34).  Contrary to Pentech's representations, these new allegations are not "based largely on what Dr. Bishop testified to as Plaintiffs' Rule 30(b)(6) witness."  (Pentech Br., p. 8).  Rather, the majority of these new allegations are based upon scientific publications that Pentech could have obtained well before June 26, 2009 – indeed, well before the start of fact discovery.  Moreover, these supplemental responses demonstrate Pentech's own understanding that obviousness issues are best addressed through expert discovery.  For example, Pentech's General Objection No. 13 states "[d]efendants object to these interrogatories because they are more properly responded to by expert reports." (Loh Decl. Exh. C, p. 3). Furthermore, in response to Genzyme's

---

[4]      Indeed, Pentech's own authority fails to support the notion that Pentech is entitled to any relief.  *See Int'l Truck and Engine Corp. v. Caterpillar, Inc.*, 73 U.S.P.Q.2D (BNA) 1754 (N.D. Ind. 2004) (denying accused infringer's motion to preclude patentee's infringement contentions asserting new patent claims and new accused products at the close of fact discovery); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (no prejudice from lack of timely disclosure of witness's testimony; defendant knew that witness would testify and was able to rebut testimony at trial).

Interrogatory No. 3 (relating to obviousness) Pentech states "[t]he prior art cited in this Supplemental Response is not exhaustive and may be supplements [sic], for example, in expert reports or rebuttal expert reports to be prepared and exchanged at later dates in this case." (Pentech Exh. G, p. 3).  In asserting additional secondary considerations of non-obviousness in supplemental interrogatory responses, Genzyme, like Pentech, simply is disclosing its contentions and positions as the case develops.[5]

      As is apparent from this motion and Pentech's previous motion complaining of an "unprepared" 30(b)(6) witness (Docket No. 159), Pentech is doing everything it can to circumvent the discovery limitations of the Federal Rules of Civil Procedure, re-take its depositions of Genzyme's fact witnesses, and waste judicial and litigant resources.  Pentech already has been afforded sufficient opportunities to obtain the discovery it seeks.  If Pentech has failed to take advantage of those opportunities, Genzyme is not to blame, and no pretext – be it an "unprepared" 30(b)(6) witness or "surprise" secondary considerations – can alter that fact. Pentech has not been surprised.  Pentech has not been prejudiced.  Genzyme's assertion of secondary considerations, which Pentech has long expected, are timely, and Pentech will have a full opportunity to explore those secondary considerations during expert discovery.

---

[5]    Pentech complains that it "relied" on Genzyme's September 2008 interrogatory responses with the understanding that the "only" secondary considerations that would be asserted were unexpected results in connection with the '083 patent and copying with respect to the '083 and '116 patents in preparing for the next nine months of fact discovery.  (Pentech Br., p. 5).  This complaint is ludicrous.  It is Pentech's burden to show obviousness, and Genzyme's burden to rebut that showing, including through secondary considerations.  In its June 26, 2009 supplemental interrogatory responses, Pentech significantly expanded upon the obviousness theories set forth in its original August 2008 interrogatory responses, and Pentech states that it will further supplement those obviousness theories in its expert reports.  This in turn will require Genzyme to be flexible its responses.  It is unreasonable for Pentech to expect that Genzyme alone should have to set its secondary considerations in stone at the very start of *fact discovery*. Such unrealistic expectations would render the September 25, 2009 date for Genzyme's responsive expert reports largely meaningless.

## <u>CONCLUSION</u>

For the foregoing reasons, Genzyme respectfully requests that the Court deny

Pentech's motion to exclude Genzyme's assertion of secondary considerations, or to re-open fact

discovery.

Respectfully submitted,

Date: July 9, 2009

/s/ Frederick H. Cohen
Frederick H. Cohen
Brian D. Fagel
GOLDBERG KOHN BELL BLACK
    ROSENBLOOM & MORITZ, LTD.
55 East Monroe, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile:  (312) 332-2196


<u>Of Counsel</u>
Robert L. Baechtold
Scott K. Reed
Filko Prugo
Christopher E. Loh
Fiona E. Darkin
FITZPATRICK CELLA HARPER & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

Attorneys for Plaintiffs
Bone Care International LLC
and Genzyme Corporation

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that true and correct copies of

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**

**PLAINTIFFS' ASSERTION OF SECONDARY CONSIDERATIONS OR TO RE-OPEN**

**FACT DISCOVERY,** and the accompanying Declaration of Christopher E. Loh and the

attached exhibits, was served on each counsel of record listed below by CM-ECF electronic

notification, electronic mail and first-class mail this 9th day of July, 2009.


Robert B. Breisblatt
KATTEN MUCHEN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661

Robert S. Silver
Bruce J. Chasan
Mona Gupta
William J. Castillo
William C. Youngblood
CAESAR, RIVISE, BERNSTEIN, COHEN &
    POKOTILOW, LTD.
1635 Market Street, 11th Floor
Philadelphia, PA 19103


/s/ Christopher E. Loh
Christopher E. Loh
FITZPATRICK CELLA HARPER & SCINTO
30 Rockefeller Plaza
New York, New York 10112-3800
Telephone: (212) 218-2100
Facsimile: (212) 218-2200


FCHS_WS 3602882_1.DOC