Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1083 | **DATE** | 8/14/2009 |
| **CASE TITLE** | Bone Care, et al. vs. Pentech Pharm., Inc., et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Plaintiffs' motion for leave to file a second amended complaint voluntarily withdrawing their claims concerning the '083 patent and dismissing Defendants' counterclaims concerning the '083 patent [110] is granted. Defendants' motion for leave to amend their answer and counterclaims [126] is granted in part and denied in part. Specifically, Defendants are given leave to add a counterclaim for attorneys' fees under Section 285. Defendants' request to add a counterclaim for inequitable conduct concerning the '083 patent is denied because any allegations of inequitable conduct can be raised in connection with the Section 285 claim. Defendants' requests to add antitrust counterclaims relating to both the '083 and '116 patents and an inequitable conduct counterclaim relating to the '116 patent are denied without prejudice. Defendants may renew their motion to amend as to those counterclaims if they believe that they can cure the pleading deficiencies identified below. Finally, the Court requests supplemental briefing as set forth below. This case is set for a status hearing on 9/2/09 at 9:30 a.m.

■[ For further details see text below.]                                                    Docketing to mail notices.

## STATEMENT

**I.   Background**

This case arises under the Hatch-Waxman Act which governs the Food and Drug Administration's approval of new and generic drugs. Plaintiffs Bone Care International, LLC and Genzyme Corporation (collectively "Plaintiffs"), hold approved New Drug Application ("NDA") No. 021-027 for Hectorol® injectable, which contains the active ingredient doxercalciferol. Plaintiffs allege that they have ownership in United States Patent Nos. 6,903,083 ("'083 patent") and 5,602,116 ("'116 patent"). Defendants Pentech Pharmaceuticals, Inc. and Cobrek Pharmaceuticals, Inc. (collectively "Defendants") sought approval of a generic drug by filing Abbreviated New Drug Application ("ANDA") No. 90-040. The ANDA included Paragraph IV certifications that, in Defendants' opinion, the '083 patent and '116 patent are invalid or will not be infringed by the manufacture, use or sale of its generic drug. See 21 U.S.C. § 355(j)(2)(A)(vii).

The filing of Defendants' Paragraph IV certifications constitutes an act of patent infringement (see 35 U.S.C. § 271(e)(2)(A)), and Plaintiffs subsequently filed the instant action alleging infringement of both patents. Defendants filed an answer and included counterclaims seeking, *inter alia*, a declaratory judgment that they did not infringe the '083 patent and that the '083 patent is invalid. As the case progressed, Plaintiffs offered a

## STATEMENT

covenant not to sue for infringement of the '083 patent in connection with ANDA No. 90-040 if Defendants would withdraw their counterclaims directed at the same patent. The parties failed to reach an agreement on that issue, and the instant motions followed.

In Plaintiffs' motion [110], they seek leave to file a second amended complaint voluntarily withdrawing their claims concerning the '083 patent and request that the Court dismiss Defendants' counterclaims concerning the '083 patent. Although Defendants do not oppose withdrawal of Plaintiffs' claims, Defendants ask that the Court retain jurisdiction over the counterclaims regarding the '083 patent. In addition, Defendants have filed their own motion seeking to add counterclaims alleging inequitable conduct and antitrust violations [126] relating to both the '083 and '116 patent. As Defendants have acknowledged, all of this activity is directed toward Defendants' pursuit of attorneys' fees in connection with their allegations that Plaintiffs knew or should have known that the '083 patent was invalid from the outset of this case.

In view of the nature of the allegations and their potential to complicate this litigation and to add considerable additional work for the parties and the Court, the Court suggested – and the parties agreed – that early attempts to settle the dispute over attorneys' fees might be productive. To that end, the parties engaged in settlement discussions with the assistance of Magistrate Judge Ashman, but those discussions have not yielded an agreement to date. Accordingly, the Court will now rule on the pending motions.

II.     Analysis

   A.     Plaintiffs' motion [110]

After consideration of the arguments in the parties' briefs and in their oral presentations to the Court on May 12, July 8, and August 5, Plaintiffs' motion to dismiss the original claims and counterclaims concerning the '083 patent for lack of subject matter jurisdiction will be granted. As an initial matter, it is crystal clear that no case or controversy exists as to Plaintiffs' original claims in light of the parties' Consent Judgment. The more difficult question is whether the Consent Judgment into which the parties have entered [151] divests the Court of jurisdiction over Defendants' original counterclaims challenging the validity of the '083 patent (and perhaps the counterclaim that Defendants hope to add alleging inequitable conduct in the procurement of the same patent).

As Judge Crabb recently commented, "federal circuit precedent is murky on the issue of when a case or controversy remains regarding patent validity and enforceability even after a finding of noninfringement." *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, 2008 WL 2717656, at *1 (W.D. Wis. Apr. 10, 2008). Nevertheless, after careful review of that court's controlling decisions in this area, the Court concludes that an adequate covenant not to sue (or, in this case, the Consent Judgment) does in fact divest an Article III district court over patent-related counterclaims for invalidity of the '083 patent. See, *e.g.*, *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242-43 (Fed. Cir. 2008) ("Even if filing [a covenant not to sue] may divest the court of jurisdiction over a declaratory judgment action regarding these patents * * * under our precedent the district court retained independent jurisdiction over Monsanto's request for attorney fees under 35 U.S.C. § 285") (citations omitted); *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) ("While the covenant [not to sue for infringement] may have eliminated the case or controversy pled in the

**STATEMENT**

patent-related counterclaims and deprived the district court of Article III jurisdiction with respect to those counterclaims, the covenant does not deprive the district court of jurisdiction to determine the disposition of * * * the request for attorney fees under 35 U.S.C. § 285"); cf. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2005) (reciting the general principle that "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer," but holding that the principle did not apply in "the unique procedural posture of the instant case" – namely, after the jury had rendered a verdict on the claim for infringement). On the basis of these Federal Circuit precedents, Plaintiffs' motion [110] is granted. Plaintiffs' claims concerning the '083 patent are withdrawn and Defendants' counterclaims concerning that patent are dismissed.

    **B.**    **Defendants' motion [126]**

As the Federal Circuit decisions cited above expressly state, the dismissal of the original patent-related counterclaims in no way forecloses Defendants from pursuing a request for attorneys' fees under 35 U.S.C. § 285. In addition, the Federal Circuit squarely has held that a party may attempt to prove the existence of an "exceptional case" for Section 285 purposes by showing inequitable conduct and that, if found, a district court may hold patents unenforceable. *Monsanto*, 514 F.3d at 1242-43. Indeed, the Federal Circuit stressed that it "has long held that the unenforceability of a patent follows automatically once a patent is found to have been obtained via inequitable conduct." *Id*. at 1243; see also *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007) (holding that a district court has the power to declare patents that are no longer in suit unenforceable for inequitable conduct).

In the end, then, Defendants may be able to accomplish the objective of their original counterclaim for invalidity and their proposed amended counterclaim for inequitable conduct through a Section 285 claim for attorneys' fees. See *Z Trim Holdings*, 2008 WL 2717656, at *2 ("dismissal of defendant's unenforceability counterclaim does not stand in its way to requesting attorney fees under § 285 because a defendant whose unenforceability and invalidity counterclaims are dismissed as 'moot,' upon a finding of noninfringement is still the 'prevailing party' under § 285") (citing *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004)). At the May 12 hearing, counsel for Defendants explained that the motion to amend Defendants' pleadings in essence is an amplification of the claim for attorneys' fees based on a great deal more substantive evidence than was available at the time that Defendants filed their original pleading. Defendants have acknowledged that the "exceptional case" standard for attorneys' fees sets the bar very high, but feel confident that they can meet that standard.

As Plaintiffs have acknowledged, and as Rule 15(a) provides, the decision whether to allow Defendants to amend their counterclaims lies within the Court's discretion, which is guided by a number of factors set forth in the parties' briefs. Notably, Defendants' motion was filed before the expiration of the deadline for filing amended pleadings. Defendants therefore cannot be said to have engaged in undue delay or to have been dilatory in moving to file their new counterclaims. Moreover, despite Plaintiffs' arguments to the contrary, the Court cannot conclude at this time that Defendants' pursuit of their attorneys' fees in connection with the litigation over the '083 patent is in bad faith. Whether Defendants can satisfy the heavy burdens associated with showing an entitlement to attorneys' fees under the "exceptional case" standard that the parties agree

**STATEMENT**

applies are separate matters; for present purposes, the critical question is whether they have raised a sufficiently colorable argument to be permitted to try. The Court concludes that they have.

In addition, while the Court has some concern that the attorneys' fees litigation will consume a sizable amount of both the parties' and the Court's resources, Defendants' allegations that Plaintiffs knew or should have known that the '083 patent was invalid from the start, if proven to be correct, are sufficiently serious to warrant an expenditure of time and effort, both as a matter of fairness in this case and as a deterrent to others. In short, there does not appear that Plaintiffs will suffer any *undue* prejudice if Defendants are permitted to pursue their attorneys' fees in connection with the '083 patent, even if the Court is divested of jurisdiction over the substantive patent-related counterclaim for invalidity.

The question that remains is the form that the amended counterclaims should take. At the May 12 hearing before this Court, counsel for Defendants pointed out that they requested attorneys' fees in their original answer and counterclaims and that the only basis for seeking attorneys' fees in a case like this one is under 35 U.S.C. § 285. Nevertheless, in view of Federal Circuit precedent on attorneys' fees litigation – which is really what remains at issue in regard to the '083 patent – it appears that Defendants should be given leave to make more explicit that they are bringing a Section 285 attorneys' fees claim based on inequitable conduct and that they wish the Court to declare the '083 patent unenforceable in the event that the patent is found to have been obtained through inequitable conduct. However, in view of the Federal Circuit cases, it appears sufficient to allow Defendants leave to assert formally a Section 285 claim, and that leave to file an independent claim for inequitable conduct is not necessary. See *Z Trim Holdings*, 2008 WL 2717656, at *2 ("To the extent the issue of inequitable conduct is relevant to a request for attorney fees, defendant may raise it in the context of a § 285 motion").

As to the antitrust allegations, to succeed on their *Walker Process* claim, Defendants must show: (i) that the patentee obtained the patent through knowing and willful misrepresentation of facts to the Patent and Trademark Office ("PTO"); (ii) that the patentee was aware of the fraud at the time it brought suit; (iii) independent evidence of the patentee's deceptive intent toward the PTO; and (iv) that the PTO relied upon the misrepresentation in issuing the patent. See *Abbott Labs. v. Mylan Pharm., Inc.*, 2007 WL 625496, at *2 (N.D. Ill. Feb. 23, 2007) (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998); *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1358 (Fed. Cir. 2004), *rev'd in part on other grounds*, 546 U.S. 394 (2006)). Defendants must also independently allege antitrust injury. See *Abbott Labs.*, 2007 WL 625496, at *2. The Court rejects, in part, Plaintiffs' contentions that the new counterclaims are futile because Defendants could not establish antitrust injury or prove market power. Plaintiffs' futility arguments are premature given that some discovery remains to be done on the '083 patent and it is not obvious that Defendants' new counterclaims will not be able to survive a motion to dismiss. See, *e.g.*, *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1381 (7th Cir. 1987) ("establishing antitrust injury involves complex questions of fact"). In addition, Defendants' offer to stay discovery on the relevant market issue until all of the patent-specific claims in the case are resolved mitigates the additional burden on the parties and the Court that would ensue if leave to amend were granted.

However, the Court notes the absence of any allegation that Defendants are prepared to enter the market once their ANDA is approved. In the two cases cited by Defendants in support of their motion, the antitrust

|  |
|---|
| **STATEMENT** |

plaintiffs had sufficiently made that allegation. See *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 274 F. Supp. 2d 937, 944 (N.D. Ill. 2003), *rev'd on other grounds by* 372 F.3d 899 (7th Cir. 2004) (the antitrust plaintiff included allegations that they began planning entry into the market nearly ten years before the lawsuit, had obtained $7.3 million in financing to enter the market, executed contracts for development and supply of the product, and that they had already reached agreements outside of the United States); *Abbott Labs.*, 2007 WL 625496, at *5. In view of that omission, Defendants motion for leave to amend to add an antitrust counterclaim is denied at this time, but Defendants may seek leave to replead if they so choose should they believe that they can correct this deficiency. At the August 5 hearing the Court requested that Defendants consider whether pursuing an antitrust counterclaim – assuming that one can be pled and maintained – would be worth the effort in view of the possibility that a successful Section 285 claim predicated on a finding of inequitable conduct requires similar evidence, without the additional and potentially onerous requirements of antitrust standing and market power, and might provide a less taxing avenue for Defendants to seek their desired relief. Defendants should factor in these considerations in deciding whether an antitrust claim is the proper course.

The final issue currently before the Court is whether Defendants' proposed Count X, for inequitable conduct regarding the '116 patent, was pleaded sufficiently. To succeed on an inequitable conduct claim, a party must show that (i) an individual associated with the filing and prosecution of a patent made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (ii) the individual did so with a specific intent to deceive the PTO. See *Star Scientific, Inc. V. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). The Federal Circuit recently clarified the standard for pleading both elements. See *Exergen Corp. v. Wal-Mart Stores, Inc.*, --- F.3d ---, 2009 WL 2366535 (Fed. Cir. Aug. 4, 2009). The court first stated that district courts should look to Federal Circuit pleading standards (as opposed to the pleading standards of the regional circuits) and that "inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Id.* at *11 (citation omitted). As to the first element, the court adopted the Seventh Circuit's test for 9(b) pleading standards and held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The court then addressed the state of mind element which requires (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO. *Id.* at *12 (citations omitted). Although knowledge and intent may be averred generally, the pleading must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

As the proposed counterclaim now stands, Defendants allege that "the inventors and those associated with them in prosecuting the patent application failed to disclose" material prior art references to the USPTO with an intent to deceive. Specifically, Defendants list three articles and their corresponding posters in which "co-inventors Mazess and Bishop" are listed authors. Defendants conclude "on information and belief" that this prior art was material because they establish "by themselves or in combination with other information, a prima facie case of unpatentability of one or more claims of the '116 patent." Defendants further allege that the listed prior art was material because it refutes or is inconsistent with positions taken by the inventors in asserting patentability and would have been important to a reasonable examiner in deciding whether to allow the claims of the application for the '116 patent. But Defendants generally fail to allege how these references

| STATEMENT |
|---|

establish unpatentability or even which claims are unpatentable. The one exception is a paragraph stating that two of the abstracts and posters are particularly pertinent because "they reported on treatment of human subjects with 1αOHD$_2$, and the results demonstrated a statistically significant reduction in parathyroid hormone levels, and a broader therapeutic window compared to 1αOHD$_3$ in that 1αOHD$_2$ was able to be administered at higher doses than 1αOHD$_3$, with reduced risk of hypercalcemia and hypercalciuria." But even that allegation, while containing specifics, fails to state why that information would have been material to the patent office. As in *Exergen*, "the pleading fails to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found" - *i.e.*, the "what" and the "where." *Exergen Corp.*, --- F.3d ---, 2009 WL 2366535, at *13.

In regard to the second element of inequitable conduct, Defendants' proposed counterclaim states that the inventors and those associated with prosecuting the patent application failed to disclose the material prior art "with an intent to deceive." While intent may be averred generally, the pleading must allege sufficient underlying facts to infer that a party acted with the requisite state of mind. *Exergen Corp.*, --- F.3d ---, 2009 WL 2366535, at *12. It should be noted that the allegations in *Exergen* were much more detailed and robust, yet the court held that the allegations did not give rise to a reasonable inference of scienter. *Id.* at *14.

Although the Court concludes that Defendants' proposed Count X does not meet the pleading standards set forth in *Exergen*, that decision was issued subsequent to the briefing on Defendants' motion. Accordingly, Defendants may renew their motion for leave to amend if they believe that they can identify the "who, what, when, where, and how" of Plaintiffs' inequitable conduct concerning the '116 patent and allege facts permitting the Court to infer intent.

### III.    Conclusion

In sum, for all of the reasons stated above, Defendants' motion for leave to amend their answer and counterclaim [126] is granted in part and denied in part. Specifically, Defendants are given leave to add a counterclaim for attorneys' fees under Section 285. Defendants' request to add a counterclaim for inequitable conduct is denied because any allegations of inequitable conduct can be raised in connection with the Section 285 claim. Defendants' requests to add antitrust counterclaims relating to both the '083 and '116 patents and an inequitable conduct counterclaim relating to the '116 patent are denied without prejudice. Defendants may renew their motion for leave to amend as to those counterclaims if they believe that they can satisfy the applicable pleading standards.

Finally, as discussed at the August 5 hearing, the Court requests the parties' assistance in evaluating how the rulings issued today may affect the motion for summary judgment [190] on the invalidity of the '083 patent that Defendants filed late last month. In particular, the Court would be interested in the parties' views on how the invalidity question may be germane to issues that remain pending before the Court notwithstanding the Consent Judgment and the dismissal of the original counterclaim for lack of subject matter jurisdiction. To give one example, as noted at the hearing, perhaps the issue can be presented in the context of a motion for partial summary judgment on a Section 285 claim. Each party may file a short memorandum addressing these issues by 8/21/09; each party may respond to points raised in the other party's initial supplemental memorandum by 8/26/09; this case is set for further status on 9/2/09 at 9:30 a.m. To the extent that there are

| STATEMENT |
|---|
| further developments to report, the parties also may address in their submissions (i) the effect on this litigation, if any, of Plaintiffs' decision to dedicate the '083 patent to the public, (ii) the status of the '211 patent issues that were raised at the close of the August 5 hearing, and (iii) any decisions that Defendants may have made with respect to whether they wish to pursue the counterclaims as to which leave to amend has been denied without prejudice. |