**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BONE CARE INTERNATIONAL, LLC | ) | |
| and GENZYME CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 08-cv-1083 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| PENTECH PHARMACEUTICALS, INC., | ) | |
| and COBREK PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are nine motions *in limine* filed by both parties [345, 399, 403, 406, 409, 412, 414, 417, 424], as well as Defendants' motion to file instanter a reply to one of Plaintiffs' motions *in limine* [471]. Several of these motions are addressed below [399, 409, 412, 414, 417, 471]. The *Daubert*-related motions, as well as the objection to Judge Ashman's ruling, will be addressed in a separate opinion. For the reasons set forth below, the Court denies four motions *in limine* [399, 412, 414, and 417], and grants in part and denies in part one motion *in limine* [409]. In addition, the Court grants Defendants' motion to file instanter a reply brief [471].

### I.     Legal Standard

A motion *in limine* is a motion "at the outset" or one made "preliminarily." BLACK'S LAW DICTIONARY 803 (8th ed. 2004). The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*,

115 F.3d 436, 440 (7th Cir. 1997) (observing that, when used properly, the motions may sharpen the issues for trial). The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1766525, at *2 (N.D. Ill. Apr. 14, 2008).

Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); see also *Luce*, 469 U.S. at 41-42 (holding that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling"). In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury).

These limiting principles apply in all trial settings, but they have even greater force in a bench trial, because the trial judge has flexibility to provisionally admit testimony or evidence and then discount or disregard it if upon further reflection it is entitled to little weight or should not have been admitted at all. See, *e.g.*, *SmithKlineBeecham Corp. v. Apotex, Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J.) ("In a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled"), *aff'd on other grounds*, 403 F.3d 1331 (Fed Cir. 2005); *Barna v. United States*, 183 F.R.D. 235, 239 (N.D. Ill. 1998) ("motions in limine to strike party experts are of less importance in bench trials").

## II.     Analysis

### A.     Plaintiffs' Fourth Motion *in Limine* to Preclude Testimony Regarding Defendants' New and Abandoned Validity and Priority Connections

Plaintiffs' fourth motion *in limine* [409] asks the Court to bar Defendants from introducing evidence on the issue of whether claim 7 of the '116 patent is invalid for any ground other than obviousness, pursuant to 35 U.S.C. § 103. Plaintiffs contend that other defenses asserted by Defendants—namely, invalidity based on anticipation, insufficient written description, nonenablement, indefiniteness, and lack of utility—were abandoned and revived only at such a late date that Plaintiffs would be prejudiced by introduction of evidence of those defenses at trial. For the reasons set forth below, the Court grants Plaintiffs' motion *in limine* with respect to evidence of indefiniteness and lack of utility, and denies the motion with respect to evidence of anticipation, insufficient written description, and nonenablement.

In a suit for infringement of a patent, the party accused of infringement may raise a defense of invalidity of the patent. 35 U.S.C. § 282. The invalidity defense may rest on grounds of failure to satisfy the conditions of patentability set forth in 35 U.S.C. § 100-103 or failure to comply with the conditions for claiming the benefit of a priority filing date under § 112. 35 U.S.C. §§ 101-103, 112 ¶ 1. Sections 101, 102, and 103 set forth the conditions of patentability, including utility of the patent (§ 101), lack of anticipation of the invention (§ 102), and non-obviousness of the invention (§103). 35 U.S.C. §§ 101-03. Section 112 enumerates three requirements for claiming the benefit of the earlier filing date of a related, ancestor application under § 120: the ancestor application must (1) provide a written description of, (2) enable a person skilled in the art to make, and (3) set forth the best mode contemplated by the inventor for carrying out the same invention described in the later application.[1] 35 U.S.C. §§ 112, ¶ 1, 120.

---

[1] The "best mode" requirement enumerated in 35 U.S.C. § 112, ¶ 1, is not at issue here.

In their answer [227] to Plaintiffs' second amended complaint alleging infringement of the '116 patent [197], Defendants raised counterclaims of invalidity on several grounds. Specifically, Defendants alleged that: "[t]he '116 patent is invalid under one or more provisions of 35 U.S.C. § 101, *et seq.* including sections 103 and 112," "is invalid under 35 U.S.C. § 102", and "is obvious over the prior art under 35 U.S.C. § 103 and thus is invalid." Defs.' Ans. ¶¶ 35-37. Plaintiffs submitted contention interrogatories asking Defendants to specify the factual and legal bases for their allegations that the patents were invalid under §§ 101 (lack utility), 102 (anticipation), 103 (obviousness), and 112 and 120 (lack of entitlement to priority filing date based on insufficient written description and non-enablement). In their responses to the contention interrogatories, Defendants provided the factual and legal bases for their contentions of obviousness of claim 7 under § 103 and of insufficient written description of Example 4 in claim 7 under §§ 112 and 120. Defendants did not provide the bases for their invalidity arguments regarding claim 7 as to lack of utility under § 101 and anticipation under § 102. Plaintiffs state that Defendants' experts failed to address any defense theory except obviousness in their opening or rebuttal reports.

In light of the omissions in the interrogatory responses and experts' reports, Plaintiffs argue that Defendants have abandoned all of the defenses asserted in their answer with the exception of obviousness. See *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 41 U.S.P.Q.2d 1770, 1773 (N.D. Cal. 1996) ("since [35 U.S.C.] sections 101, 102, 103, and 112 provide numerous grounds for finding a patent invalid, defendant must provide a more specific statement of the basis for this defense in order to give [plaintiff] fair notice of the claims being asserted"); *Qarbon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1050 (N.D. Cal. 2004) (same); *TecSec, Inc. v. Protegrity, Inc.*, 2001 WL 802064 at *2 (E.D. Va. Jun. 27, 2001) (same);

*Daiichi Pharm. Co. v. Apotex, Inc.*, 2005 U.S. Dist. LEXIS 26059 (D.N.J. Nov. 1, 2005) (same).

Plaintiffs further assert that, after abandoning those defenses, Defendants only raised anew the grounds of anticipation, insufficient written description, nonenablement, indefiniteness, and lack of utility so late in the game that Plaintiffs lack sufficient time to prepare adequate responses.[2] Because none of those defenses were disclosed in Defendants' experts' reports, Plaintiffs contend that Defendants have violated Federal Rule of Civil Procedure 26(a)(2)(B), and that the proper sanction is to exclude all evidence of these grounds for invalidity pursuant to Rule 37(c)(1). Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1).

Federal Rule of Civil Procedure 26(a)(2)(B) provides that experts whom a party may use at trial must prepare written reports that include "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them * * *." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). The sanctions for violating Rule 26(a) and (e) are severe: "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Seventh Circuit has established a four-factor test for evaluating whether Rule 37 sanctions are warranted: (1) prejudice or surprise to party against whom evidence is offered; (2) ability of the party to cure the prejudice; (3) likelihood of disruption to the trial; (4) the proffering party's bad faith or willfulness in not disclosing evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (Fed. Cir. 2003). Not all four factors need be met; preclusion of the untimely or

---

[2] Plaintiffs contend that, post-alleged abandonment, Defendants first raised the lack of utility ground in the June 2010 reply brief to their first Daubert motion [345]; first raised the ground of nonenablement in the Daubert motion reply [345] and in their June 2010 response [382] to Plaintiffs' summary judgment motion [336]; and first raised the ground of anticipation in their June 2010 draft pre-trial order.

insufficiently disclosed evidence is "automatic and mandatory" where the violation is unjustified and harms the party. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Plaintiffs argue that preclusion of evidence on anticipation, insufficient written description, nonenablement, lack of utility, and indefiniteness is warranted under Rule 37 because all four of the *David* factors are met. Plaintiffs assert that they will be harmed at trial as a result of their inability to review the defenses and prepare responses in the short amount of time before trial. They further assert that the only cure for the prejudice—postponing the trial— could cause other harmful consequences, as they have specially sought an early trial date in order to forestall the possibility that Defendants will launch at risk their generic version of the '116 patent drug. Plaintiffs contend that introduction of evidence relevant to these defenses will disrupt the trial by diverting significant resources of the parties and the Court. Finally, they state that Defendants "have no good faith explanation" for failing to meet their Rule 26 obligations as to these defenses.

In response, Defendants do not point to any evidence that their experts addressed defenses other than obviousness in their reports—which is tantamount to conceding a Rule 26(a)(2)(B) violation. Defendants contend, however, that no sanction should be imposed under the four *David* factors. Preliminarily, Defendants state that they identified in their answer anticipation, insufficient written description, nonenablement, and lack of utility as grounds of invalidity—thus putting Plaintiffs on sufficient notice—and never abandoned them thereafter. Defendants then present an assortment of reasons why each of the allegedly abandoned defenses will not prejudice Plaintiffs.

Defendants argue that the defense of anticipation is so substantially related to the defense of obviousness as to be effectively indistinct from it. "Anticipation requires the presence in a

single prior art disclosure of all elements of a claimed invention arranged as in the claim. A prior art disclosure that 'almost' meets that standard may render the claim invalid under § 103; it does not 'anticipate.'" *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir. 1983) (internal citations omitted). Defendants contend that if they can show anticipation, they also will succeed in showing obviousness. See *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1357 n.21 (Fed. Cir. 1998) (holding that "a disclosure that anticipates under § 102 [anticipation] also renders the claim invalid under § 103 [obviousness]") (citing *Connell*, 722 F.2d at 1549). The converse is not necessarily true, however: because the anticipation standard is stricter— requiring the presence in a prior art disclosure of *all*, not merely *most*, elements of a claimed invention arranged in the same way—a claim that is invalid as obvious under § 103 is not necessarily invalid as anticipated under § 102. Nevertheless, the Court notes that in this case the same prior art is at issue and the same analysis applies for both the anticipation and the obviousness defenses. To the extent that evidence as to anticipation at trial would prejudice Plaintiffs at all, the harm would be *de minimus*, and Plaintiffs would have had the opportunity to cure it by preparing a response to the defense during the approximately five months between the initial work on the pre-trial order and trial. Nor is the Court persuaded that presentation of evidence on anticipation will disrupt trial in light of its similarity to the evidence that the Court will consider as to obviousness. Finally, the Court does not find that there is any evidence that Defendants acted in bad faith in failing to discuss anticipation in their experts' reports. Plaintiffs' assertion that Defendants lack a good faith motive is insufficient to satisfy this factor of the *David* test. The Court therefore denies Plaintiffs' motion *in limine* with respect to evidence of anticipation.

Defendants also argue that Plaintiffs will not prejudiced by introduction of evidence purporting to show insufficient written description and nonenablement under § 112 to dispute Plaintiffs' claim to priority under § 120. The Court agrees. As discussed in its opinion denying summary judgment on Defendants' counterclaims and affirmative defenses F and G [498], Plaintiffs bear the burden of putting forth evidence showing that that the '116 patent is entitled to the benefit of its parent application's filing date under § 120 through satisfaction of the written description and enablement requirements of § 112. See *Tech. Licensing Corp., v. Videotek, Inc.*, 545 F.3d 1316, 1327-29 (Fed. Cir. 2008). Defendants have the ultimate burden of proving by clear and convincing evidence that the '116 patent is entitled only to the later filing date of the application from which it issued because of insufficient written description and nonenablement. *Id.* The Court denied Plaintiffs' motion for summary judgment of Defendants' counterclaims and affirmative defenses F and G precisely because it determined that Defendants had shown the existence of genuine issues of material fact as to whether the written description and enablement requirements could be satisfied. (See also the related decision on Defendants' motion *in limine* to preclude evidence of Plaintiffs' claim of priority, *infra* Section II.C.) In light of the fact that the written description and enablement requirements will be key issues during Plaintiffs' case-in-chief, and thus also will be a focus during Defendants' cross-examination, the Court finds that Plaintiffs will not be prejudiced, nor will the trial be disrupted, by introduction of evidence on these issues. The Court therefore denies Plaintiffs' motion *in limine* with respect to evidence of insufficient written description and nonenablement.

Finally, Defendants argue that they are justified in raising new defenses of invalidity based on indefiniteness and lack of utility in light of the Court's construction of the claim "effective amount." [363, 468] Defendants state that Plaintiffs will not suffer prejudice by

evidence of indefiniteness or lack of utility as the defenses are "uncomplicated" and will not require additional fact discovery. The Court finds that Defendants' argument as to indefiniteness of the construed term of the claim likely has been rendered moot by the Court's revised claim construction opinion. [468] To the extent that Defendants still intend to assert evidence as to indefiniteness, the Court grants Plaintiffs' motion *in limine* to preclude such evidence. Because the defense is not sufficiently enmeshed with other issues in the case as to overcome the prejudice to Plaintiffs or disruption of the trial from the late disclosure, the Court concludes that preclusion of the evidence under Rule 37(c)(1) is warranted.

The Court also finds that Plaintiffs may suffer prejudice with respect to the lack of utility defense. Defendants provide no justification as to why, aside from the boilerplate language in their answer, they addressed this defense only in their June 2010 reply to their first Daubert motion [376] and in their response [380] that same month to Plaintiffs' motion for summary judgment on counterclaims F, G, and IX [336]. Defendants have elsewhere explained that utility and enablement are related requirements for a patent, and that a patent that lacks utility also does not enable. See *infra* at II.C (discussing *In re '318 Patent Infringement Litigation*, 583 F.3d 1317, 1323-24 (Fed. Cir. 2009)); Defs.' Resp. to Pls.' Mot. for Summ. J. at 16 (same). Defendants do not provide a similar explanation—or indeed any description of what the defense of lack of utility entails—in their opposition to this motion *in limine*. Nor do they aver that the *analysis* for a claim of lack of utility is similar to that for nonenablement (in contrast to their assertion, discussed above, that Plaintiffs would not be prejudiced by evidence of anticipation because the analysis and evidence offered in support of the anticipation defense would be the same as that necessary for the defense of obviousness). Indeed, all that Defendants posit with respect to the defense of lack of utility is that it is "uncomplicated" and "would require no

additional fact discovery for either party." Yet, even a defense so allegedly "uncomplicated" merits fuller explication and supporting information, and in a timelier manner, than Defendants have provided.

In light of the late and scant assertions of lack of utility, the Court concludes that Plaintiffs would suffer prejudice by introduction of evidence on this new defense that Plaintiffs would be forced to counter. Postponing the trial to cure the prejudice is an unavailable alternative in light of the imminence of trial and the desire of both parties to proceed on the current schedule. Although Plaintiffs have failed to show affirmative evidence of Defendants' bad faith in failing to present lack of utility in their experts' reports, the Court nevertheless finds that, on balance, the factors weigh in favor of preclusion under Rule 37(c)(1). Plaintiffs' motion *in limine* as to the defense of lack of utility is granted.

> **B.** **Defendants' Motion to File Instanter a Reply to Plaintiffs' Opposition to Defendants' Motion *in Limine* to Preclude Plaintiffs from Presenting Evidence Relating to the '371 Application as a Priority Disclosure for Claim 7 of the '116 Patent**

Defendants' unopposed motion to file instanter a reply brief [471] to its motion *in limine* to exclude evidence of the '116 patent's claim to priority [399] is granted.

> **C.** **Defendants' Motion *in Limine* to Preclude Plaintiffs from Presenting Evidence Relating to the '371 Application as a Priority Disclosure for Claim 7 of the '116 Patent**

Several of Defendants' counterclaims rely on proving that claim 7 of the '116 patent is not entitled to the benefit of the 1988 "priority filing date" of its parent application, the '371 patent application, pursuant to 35 U.S.C. §§ 112 and 120, but instead is entitled only to the 1995 filing date of the '488 application from which it issued. Defendants motion *in limine* [399] seeks to bar Plaintiffs from presenting evidence—including but not limited to testimony of Plaintiffs' experts Dr. Craig Langman and Richard Killworth, Esq.—relating to Plaintiffs' contention that

claim 7 of the '116 patent can claim priority to the '371 application. For the reasons below, the Court denies Defendants' motion *in limine* [399].

A continuation patent application may be entitled to the benefit of the priority date of its parent application under 35 U.S.C. 120, so long as the three requirements of 35 U.S.C. § 112 ¶ 1 are met: the parent application must provide a written description of, enable a person skilled in the art to make, and set forth the best mode contemplated by the inventor for carrying out the same invention described in the later application.[3] In defense of Defendants' counterclaims that claim 7 of the '116 patent is invalid because it was preceded by prior art from 1989 and 1993, Plaintiffs have contended that claim 7, as part of the '488 continuation-in-part application filed in 1995, can claim the 1988 priority date of its parent application, the '371 application, thus pre-dating the prior art in question. Plaintiffs bear the burden of persuasion with respect to the written description and enablement requirements of §112, and Defendants bear the burden of proving by clear and convincing evidence that those requirements are not satisfied.[4] See *Tech. Licensing Corp.*, 545 F.3d at 1327-29.

Defendants argue in this motion *in limine* that Plaintiffs should be precluded from presenting evidence that the '116 patent can claim the priority filing date of the '371 application. Their argument rests on two assertions: first, that as a matter of law, the '371 application does not enable the '116 patent in light of the Federal Circuit's ruling in *In re '318 Infringement*

---

[3] A continuation application is one that discloses a substantial portion of the subject matter disclosed in an earlier-filed patent application (the "parent application"), and claims the benefit of the parent application's earlier filing date for that subject matter. The parent application is then considered a "priority disclosure," and the filing date of the parent application is termed the "priority date" or "priority filing date" of the later application. The benefit of entitlement to a priority filing date is that a continuation application may be able to overcome prior art references that predated the filing date of the continuation application but postdate the priority filing date. See Manual of Patent Examining Procedure ("M.P.E.P.") § 201.08 (8th ed. 2001).

[4] The "best mode" requirement enumerated in 35 U.S.C. § 112, ¶ 1, is not at issue here.

*Litigation*, 583 F.3d 1317 (Fed. Cir. 2009); and second, that any evidence that Plaintiffs attempt to present with respect to enablement or sufficient written description would be either irrelevant or a waste of time, and thus excludable under Federal Rules of Evidence 401, 402, and 403.  Fed. R. Evid. 401-403.

In *In re '318*, the Federal Circuit considered whether the specification for the '318 patent enabled a person skilled in the art to use the claimed method of treating Alzheimer's disease with galanthamine.  583 F.3d at 1323.  The specification of the invention was scarcely more than one page in length and "provided almost no basis for its stated conclusion that it was possible to administer 'an effective Alzheimer's disease cognitively-enhancing amount of galanthamine.'" *Id.* at 1321.  The specification summarized six science articles that described various effects of administering galanthamine to humans or animals.  *Id.*  It did not, however, provide any analysis or reasoning that showed how the results of any of the studies connected with the claim's conclusion that galanthamine could be used to treat Alzheimer's in humans.  *Id.*  The U.S. Patent and Trademark Office ("PTO") examiner rejected certain claims on grounds of indefiniteness and obviousness.  *Id.* at 1322.  The inventor then explained to the examiner that animal testing that was underway and near completion would show concrete results of treating Alzheimer's with galanthamine sufficient to overcome the examiner's concerns.  *Id.*  The PTO issued the '318 patent several months before that testing was completed.  *Id.*

The district court found that the '318 patent was invalid on the ground that the specification did not demonstrate utility under 35 U.S.C. § 101 because relevant animal experiments had not been completed by the time the patent issued, and the specification itself gave only "minimal disclosure" of utility.  *Id.* at 1323 (citing *'318 Patent Infringement Litig.*, 578 F. Supp. 2d 711, 723, 725) (D. Del. 2008)).  The court made an alternative finding that the

claims did not enable a person skilled in the art to use the claimed method under 35 U.S.C. § 112 because the specification did not provide sufficient dosage information. *Id.*

On appeal, the Federal Circuit noted that the requirements of utility and enablement are closely related. *Id.* The utility requirement, set forth in 35 U.S.C. § 101, mandates that "[w]hoever invents or discovers any new and *useful* process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added). Utility prevents an invention that is merely an object of research from being patented. 583 F.3d at 1323 (citing *Brenner v. Manson*, 383 U.S. 519, 536 (1966) (holding that "a patent is not a hunting license. It is not a reward for the search, but compensation for its successful conclusion")). The enablement requirement, set forth in 35 U.S.C. § 112, mandates that a specification must "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to *enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same * * *.*" 35 U.S.C. § 112, ¶ 1 (emphasis added). To enable a person skilled in the art to make or use the claimed invention, the specification must do "more than state a hypothesis and propose testing to determine the accuracy of that hypothesis." 583 F.3d at 1327. The court held that "if a patent is invalid due to lack of utility because it is not useful or operative, then it also does not satisfy the how-to-use aspect of the enablement requirement." *Id.* at 1324. Affirming and reframing the lower court's decision, the Federal Circuit held that "[t]he '318 patent's description of using galantamine [*sic*] to treat Alzheimer's disease thus does not satisfy the enablement requirement because the '318 patent's application did not establish utility." *Id.* at 1327.

Defendants urge the Court to rule that *In re '318* requires preclusion of evidence of enablement in this case as a matter of law, because the facts of the two cases are so similar as to compel the same result. The Court finds this argument unconvincing. Preliminarily, the court notes that the level of detail provided in a disclosure in order to satisfy § 112 varies according to the scope of the invention. See *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306-07 (Fed. Cir. 2001); *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). In any event, there appear to be significant factual distinctions between the specifications at issue in *In re '318* and here. Unlike the one-page specification and unexplained references in the '318 patent application, the '371 application provided a detailed description of the invention and its context as well as discussion of the implications of the animal and clinical studies that it cited. See *id.* at 1323. Thus, in contrast to the '318 application, the '371 application does "more than state a hypothesis and propose testing to determine the accuracy of that hypothesis." *Id.* at 1327. The Court therefore finds that *In re '318* does not compel rejection of the enablement requirement as a matter of law, and declines to preclude evidence as to enablement.[5]

Furthermore, the Court takes this opportunity to emphasize that the utility and enablement requirements, although related, are nevertheless distinct and cannot be folded into an identical analysis. As the court in *In re '318* explained, the two requirements are set forth in different sections of the patent law—utility in § 101 and enablement in § 112. *Id.* at 1323-24. The rule against surplusage prohibits construing overlapping provisions of a statute so as to render them superfluous. See, *e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994). Although it acknowledged the relationship between the concepts of utility and enablement, *In re*

---

[5] The Court need not reach Plaintiffs' contention that the form of this argument is procedurally improper because it is better suited to a motion for summary judgment than a motion *in limine*.

*'318* did not merge them. 583 F.3d at 1323-24. Rather, the court engaged in a two-fold analysis pursuant to each requirement, concluding that the '318 patent satisfied neither one. *Id.* Notwithstanding that distinction, the Court's ruling with respect to Plaintiffs' fourth motion *in limine* to preclude evidence of lack of utility (*supra* in Section II.A) means that Defendants may not do an end-run in attempting to prove nonenablement by arguing lack of utility.

Defendants also argue that the Court should preclude Plaintiffs from presenting evidence purporting to satisfy the written description and enablement requirements of claiming priority on the grounds that such evidence would be irrelevant under Federal Rule of Evidence 401 and thus inadmissible under Rule 402—or, even if relevant, would be a waste of time and thus inadmissible under Rule 403. Fed. R. Evid. 401-403. Specifically, Defendants contend that Plaintiffs' experts Dr. Langman and Mr. Killworth should be barred from testifying as to the § 112 requirements at trial.[6]

The Court denied [498] Plaintiffs' motion for summary judgment on the claim to priority [336] precisely because there were genuine issues of material fact that warranted elaboration at trial. And, as stated *supra* in Section II.A, Plaintiffs bear the burden of persuasion as to the claim to priority. See *Tech. Licensing Corp.*, 545 F.3d at 1327-39. The Court therefore provisionally finds that evidence that Plaintiffs present on this issue is relevant under Rule 401 and thus admissible under Rule 402. Fed. R. Evid. 401, 402. The Court defers ruling on any Rule 403 contentions until trial. Defendants' motion *in limine* is denied.

---

[6] Defendants state in their reply brief that Plaintiffs did not oppose this motion *in limine* as to the specific exclusion of these experts' testimony, but only as to the general preclusion of evidence at issue. Therefore, Defendants argue, Plaintiffs have conceded excludability of the expert' testimony, and the Court should grant the motion *in limine* in this respect. This argument is unavailing. Plaintiffs oppose preclusion of all evidence that goes to the claim to priority. That encompasses Dr. Langman's and Mr. Killworth's testimony.

**D. Defendants' Motion *in Limine* to Preclude Plaintiffs from Calling as Witnesses Defendants' Expert Witnesses in Their Case-in-Chief and From Introducing Deposition Testimony of Defendants' Expert Witnesses and Their Own Fact Witnesses**

Defendants also filed a motion *in limine* to prevent Plaintiffs from calling Defendants' expert witnesses in their case-in-chief and from introducing deposition testimony of Defendants' expert witnesses and Plaintiffs' fact witnesses. [412] The Court denies Defendants' motion *in limine* for the reasons set forth below.

**1. Calling Defendants' Experts as Witnesses During Plaintiffs' Case-in-Chief**

Defendants argue that Plaintiffs should not be permitted to call during Plaintiffs' case-in-chief any of seven defense experts who will testify for the defense, as such testimony would be cumulative. The Court denies the motion *in limine* with respect to the cumulativeness argument at the pre-trial stage. However, the Court reminds Defendants that, to the extent that they believe specific lines of questioning directed to a twice-called expert would waste time, they may object on Federal Rule of Evidence 403 grounds at trial.[7]

Defendants also assert that Plaintiffs should be precluded under Federal Rule of Civil Procedure 26(b)(4)(B) from calling as witnesses during Plaintiffs' case-in-chief any of the seven defense experts whom Defendants may decide *not* to call as witnesses. Rule 26(b)(4)(B) provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party *in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial*" absent exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(B). Defendants contend that Plaintiffs cannot show exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(B)(ii).

---

[7] The Court declines to determine at this juncture, as Plaintiffs urge, that the evidence is strongly probative merely because Defendants have cautioned that it may be cumulative.

Plaintiffs respond that Defendants misconstrue Rule 26(b)(4)(B). Read plainly, the rule precludes calling the opposing party's expert as a witness *only* when that expert was retained for purpose of trial preparation; the rule does not prevent a party from calling as a witness the opposing party's testimonial expert. Fed. R. Civ. P. 26(b)(4)(B). The seven experts whom Defendants seek to bar Plaintiffs from calling were all listed on Defendants' June 16, 2010, draft witness list.[8] Plaintiffs included those same seven experts in their list of potential witnesses. See *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009) (stating that "[a] witness identified as a testimonial expert *is available to either side*" and upholding district court's ruling that plaintiff could introduce in its case-in-chief video deposition testimony of defendant's testimonial expert) (emphasis added). In view of the Seventh Circuit's guidance in *Koenig*, the Court agrees with Plaintiffs that Rule 26(b)(4)(B) does not apply in these circumstances, and rejects Defendants' argument as to that effect. As such, there is no reason to consider whether Plaintiffs can satisfy the exceptional circumstances exception to the Rule. Fed. R. Civ. P. 26(b)(4)(B)(ii); see also *Hartford Ins. Co. v. Transgroup Express*, 2009 WL 2916832 at *2-3 (N.D. Ill. Sept. 1, 2009).

Although Defendants have not suggested that they might convert their testimonial experts into non-testimonial experts, the facts and ruling in *Koenig* are instructive here. In that case, the Seventh Circuit considered whether the S.E.C. violated Rule 26(b)(4)(B) by calling in its case-in-chief an expert, Frederick Dunbar, whom Koenig had retained. *S.E.C. v. Koenig*, 557 F.3d at 743. Dunbar prepared a report and was deposed. *Id.* Koenig did not present the report or Dunbar's testimony at trial, but the S.E.C. introduced Dunbar's testimony via a video recording of his deposition. *Id.* On appeal, Koenig maintained that the district court erred in allowing the

---

[8] Defendants listed Mr. Sofocleus, Dr. Deftos, Dr. Sherrard, and Dr. Keana among the witnesses they will call at trial, and listed Dr. Wittes, Dr. Segre, Dr. Chesnut, and Dr. Sherrard among the witnesses they may call at trial.

S.E.C.'s presentation of this testimony because the S.E.C. did not include Dunbar on its list of potential witnesses. Had it done so, Koenig argued, Koenig would have withdrawn Dunbar as an expert. *Id.* The Court rejected this argument, holding that pursuant to Rule 26(b)(4)(B), "[a] witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report has been disclosed, and a deposition conducted, to the status of a trial-preparation expert whose identity and views may be concealed." *Id.* at 744; see also *United States v. Schaudt*, 2009 WL 1218605, at *3 (N.D. Ill. Apr. 30, 2009) ("Plaintiff was entitled to use the [expert] report, though it was prepared by Defendants' expert, and was not required to disclose Defendants' expert witness as its own").

As in *Koenig*, defense testimonial experts whom Defendants do not call are nonetheless available to Plaintiffs. The Court therefore denies Defendants' motion *in limine* as it pertains to Plaintiffs' calling defense testimonial experts as witnesses.[9]

### 2. Use of Deposition Testimony of Defendants' Experts During Plaintiffs' Case-in-Chief

Defendants next argue that Plaintiffs should not be permitted to use deposition testimony of Defendants' experts in Plaintiffs' case-in-chief because introduction of testimony from experts not called as witnesses would constitute inadmissible hearsay under Federal Rules of Evidence 801(c) and 803 and would be misleading and unfairly prejudicial under Rule 403. Fed. R. Evid. 403, 801(c), 803. Defendants also contend that, if Defendants call these experts to testify, Plaintiffs should be permitted to cross-examine the experts only on those portions of their deposition testimony discussed on direct examination.

Plaintiffs correctly respond that any deposition testimony they seek to introduce likely would be considered a party admission, and therefore would not constitute hearsay. See Fed. R.

---

[9] The Court declines to reach Plaintiffs' argument as to whether Defendants abused the litigation process by employing multiple experts in an alleged attempt to fish for the "right" scientific conclusions.

Evid. 801(d)(2)(C); see also *Glendale Fed. Bank, FSB v. U.S.*, 39 Fed. Cl. 422, 425 (1997) (holding that prior deposition testimony of an expert witness put forward as a testifying expert at trial is an admission against the party that retained the expert); see also *Minebea Co., Ltd. v. Papst*, 2005 WL 6271045, at *1 (D.D.C. Aug. 2, 2005) (endorsing as "persuasive the analysis of Chief Judge Smith in *Glendale*"); *cf. In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (explaining that party could not exclude prior expert testimony that she herself proffered but later determined "was more harmful than helpful" because expert's prior testimony "was an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(C)," citing *Glendale*). The Court therefore rejects Defendants' hearsay argument at this juncture and, to the extent that such testimony does not constitute a party admission, invites Defendants to lodge appropriate hearsay objections at trial.

The Court also declines to determine at this stage of proceedings that deposition testimony that Plaintiffs may present in their case-in-chief or use to cross-examine testifying experts would be misleading or unduly prejudicial under Rule 403. Fed. R. Evid. 403. The cases upon which Defendants rely for their Rule 403 argument—*Wright v. Hartford Accident and Indemnity Co.*, 580 F.2d 809, 810 (5th Cir. 1978) (*per curiam*) (finding no error in trial court's refusal to admit deposition testimony on Rule 403 grounds in light of facts and context specific to that testimony); *Omaha Nat'l Bank v. Manufacturers Life Ins. Co.*, 332 N.W.2d 196, 204 (Neb. 1983) (relying on Nebraska evidentiary statute to hold that any party may introduce parts of deposition testimony if opposing party introduced other parts of same testimony); *Vice v. Northern Telecom, Inc.* 1996 WL 517701 at *1 (E.D. La. Sept. 10, 1996) (precluding party from using testimony of witnesses taken in depositions for other actions in lieu of live testimony)—are neither binding nor persuasive in light of the particular facts and circumstances of this case.

Defendants may make objections at trial to the extent they believe that evidence proffered by Plaintiffs runs afoul of Rule 403.

Defendants also urge the Court to bar Plaintiffs from using deposition testimony or reports of Defendants' non-testifying experts to cross-examine testifying experts. Defendants rely on a number of cases in support of this argument. See *In re Hanford Nuclear Reservation in Litigation*, 534 F.3d 986, 1011-12 (9th Cir. 2008) (holding that party cannot use expert's deposition testimony that court ruled inadmissible to impeach another expert); *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1054-55 (5th Cir. 1981) (finding no error in trial court's decision to disallow deposition testimony where deposition was taken without proper notice to or cross-examination by opposing party) overruled on other grounds by *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997); *Rios v. City of Chicago*, 771 N.E.2d 1030, 1038-39 (Ill. App. Ct. 2002) (holding that evidence deemed inadmissible and for which foundation not properly laid may not be used to impeach expert on cross-examination). In the cases cited, however, the evidence was not permitted on cross-examination because it had been deemed inadmissible on other grounds. As stated above, the Court at this juncture cannot accept Defendants' assertion that the deposition testimony is inadmissible as hearsay or on Rule 403 grounds, and reserves ruling on any other objections until trial. Defendants' motion *in limine* is therefore denied as to the use of defense experts' deposition testimony during Plaintiffs' case-in-chief.

### 3. Use of Deposition Testimony of Plaintiffs' Fact Witnesses During Plaintiffs' Case-in-Chief

Finally, Defendants argue that Plaintiffs should not be permitted to introduce deposition testimony of Plaintiffs' fact witnesses because Plaintiffs listed such individuals as possible live trial witnesses and because the testimony is inadmissible hearsay. Defendants contend that, to

the extent that Plaintiffs rely on the deposition testimony of fact witnesses at all, their use should be limited to counter-designations for completeness under Federal Rule of Evidence 106.[10]

The Court agrees that Plaintiffs should call live witnesses in lieu of using deposition testimony whenever possible.  However, if the witness is unavailable, their deposition testimony will be excepted from the general rule against hearsay (Fed. R. Evid. 804(a)(4)) and may be used during court proceedings (Fed. R. Civ. P. 32(a)(4)).  Should either party seek to use deposition testimony of a fact witness in lieu of live testimony, they will need to show that the witness is unavailable and satisfy the requirements of Federal Rule of Civil Procedure 32.  As Defendants point out, if Plaintiffs introduce part of a deposition transcript, Defendants may then require introduction of other parts pursuant to Rule 106.  Fed. R. Evid. 106.  With those caveats in mind, the Court denies Defendants' motion *in limine* to preclude Plaintiffs from using deposition testimony or calling defense witnesses in its case-in-chief.

> **E.** **Plaintiffs' Third Motion *in Limine* to Preclude Dr. Leonard J. Deftos from Relying Upon Opinions and References Not Included in His Expert Reports**

Plaintiffs' third motion *in limine* seeks to preclude Defendants' expert, Dr. Deftos, from testifying as to new publications and substantive opinions that he did not include in his initial expert report but referenced only in later submitted corrections to his report and deposition testimony.  [414]  The Court denies this motion.

Dr. Deftos submitted his opening report on August 28, 2009, and his rebuttal report on January 8, 2010.  Plaintiffs deposed Deftos on the reports on March 12, 2010.  Two months later, Deftos submitted a deposition "errata" sheet as well as corrected pages to his report.  The errata

---

[10] Defendants also request the particular exclusion of Plaintiffs' expert Mr. Newland.  As Plaintiffs have stipulated that they do not intend to call Mr. Newland or rely on his deposition trial, the Court need not further address that request.

sheet cited four articles, by authors Anderssen, Helmsberg, and Jones, that were not identified or included as exhibits in his initial reports, and that he admitted during his deposition that he had not read. The errata sheet also clarified Deftos's description of the teachings of articles by Rambeck, Hiwatashi, and Hartwell about which he had testified during the deposition. The corrected report pages cited an article by Kaye, the author of a different article to which Deftos cited in his initial report. The citation to the Kaye article in the initial report was clearly erroneous, as evidenced by the fact that the page numbers cited did not exist in the article quoted, and Defendants provided a copy of the correct article to Plaintiffs prior to Deftos's deposition. Upon receipt of the errata sheet and corrected pages, Plaintiffs requested that Defendants produce Deftos for a second deposition, but Defendants declined to do so.

Plaintiffs contend that the new references and opinions included in the errata sheet and corrected pages violate Rules 26(a) and 26(e). They also argue that failure to fully disclose the citations in the first instance was unjustified and has prejudiced their trial preparation. As such, Plaintiffs urge the Court to preclude Deftos from testifying at trial regarding the new references and opinions, pursuant to Rule 37(c)(1). Finally, they argue that the errata sheet's reference to the Hartwell article is irrelevant and therefore also should be precluded at trial.

As discussed *supra* in Section II.A, Federal Rule of Civil Procedure 26(a)(2)(B) provides that experts retained by a party to testify in the case must prepare written reports that include "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them * * *." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Rule 26(e)(2) provides that a party who has disclosed an expert report under Rule 26(a)(2)(B) has a duty to "supplement or correct its disclosure or response * * * in a timely manner if the party learns that in some material respect the disclosure or response is

incomplete or incorrect * * *." Fed. R. Civ. P. 26(e)(1)(A). With respect to expert witnesses, "the duty to supplement extends both to information included in the report and to information given during the expert's deposition * * *." Fed. R. Civ. P. 26(e)(2). Violation of Rules 26(a) and (e) may result in preclusion of the undisclosed or untimely disclosed evidence unless the violation was justified or harmless. Fed. R. Civ. P. 37(c)(1).

In *Salgado by Salgado v. Gen. Motors Corp.*, the Seventh Circuit explained that compliance with Rule 26 demands submission of "[a] complete report [that] include[s] the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor * * *." 150 F.3d 735, 742, n.6 (7th Cir. 1998). The centripetal principle of the rule is to prevent a party from being ambushed by new theories or evidence to which the party lacks sufficient time to respond. *Id.* As the Seventh Circuit recently reiterated, "'[t]he purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion * * * so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.'" *Metavante Corp. v. Emigrant Savings Bank*, ___ F.3d ___, 2010 WL 3385961, at *9 (7th Cir. Aug. 30, 2010) (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)). If later-submitted opinions and analyses do not differ substantially from opinions offered in the expert report, they are not late for purposes of 26(a) and so not subject to Rule 37 preclusion. *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008).

In *Rowe*, plaintiffs defending against a claim of patent invalidity argued that a defense expert's declaration should be excluded because it was submitted as an accompaniment to the defendants' opposition brief for summary judgment and contained opinions and supporting analyses that differed significantly from the expert's report. 586 F. Supp. 2d at 933. The court

precluded a portion of the expert's testimony on obviousness because the declaration "buil[t] a [new] reference into its obviousness analysis in a new way." *Id.* at 961.

As in *Salgado* and *Rowe*, Plaintiffs argue that Deftos's failure to disclose the new references and opinions pursuant to Rules 26(a) and (e) changes the analysis and substance of his reports, thus demanding preclusion of his testimony pursuant to Rule 37(c)(1). Fed R. Civ. P. 26(a), 26(e), 37(c)(1). Defendants respond that disclosing the references in the errata sheet and corrected pages two months after the deposition did not alter the analysis or change the scope of Deftos's reports or deposition testimony, and so is not subject to preclusion. Defendants concede that the Anderssen, Holmberg, and Jones citations were new references as of the errata sheet, and have communicated to Plaintiffs that they do not intend to question Deftos on those articles during direct examination, reserving the right to do so on re-direct should Plaintiffs reference them during cross-examination of Deftos. With respect to the correct pages to the report, Defendants contend that the mis-citation of the Kaye article was obvious, and that by supplying Plaintiffs with a copy of the correct article prior to Deftos's deposition (which Plaintiffs did not mark as an exhibit during the deposition), they forestalled any prejudice that the erroneous citation otherwise may have caused.

Having reviewed the differences between the original deposition transcript and the changes made in the errata sheet, the Court finds that Deftos did not meaningfully alter or contradict his testimony with respect to discussion of the Rambeck, Hiwatashi, or Hartwell articles. Furthermore, Plaintiffs had an opportunity to, and did, question Deftos on the Rambeck, Hiwatashi, and Hartwell articles at deposition. Deftos's explanations of the articles in the errata sheet were substantially similar to those he offered during deposition. In addition, Plaintiffs had the opportunity to question Deftos regarding the correct Kaye article during the deposition.

Their failure to do so does not trigger the severe sanctions of Rule 37(c)(1). In short, Plaintiffs were not ambushed by Deftos's references to the Rambeck, Hiwatashi, Hartwell, or Kaye articles in the errata or correction sheets, and the Court denies Plaintiffs' motion *in limine* to preclude the testimony of Dr. Deftos with respect to these references. The Court makes binding Defendants' agreement not to question Deftos regarding the Anderssen, Holmberg, and Jones articles during direct examination, reserving Defendants' right to examine him on re-direct should Plaintiffs elicit his testimony on the articles on cross-examination.

>     **F.      Plaintiffs' First Motion *in Limine* to Preclude Defendants' Experts from Relying on or Testifying About New Matter in Defendants' Experts' Rebuttal Reports**

In their first motion *in limine*, Plaintiffs argue that Defendants improperly included new arguments and references in their experts' rebuttal reports that were not included in the opening reports. [417] Plaintiffs argue that these additions violate Rule 26(a)(2)(B), incurably prejudice Plaintiffs, will cause disruption at trial, are unjustifiable, and were made in bad faith, therefore requiring preclusion of the additional information under Rule 37(c)(1). Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1); see also *David*, 324 F.3d at 857. The Court denies the motion for the reasons below.

Defendants served their experts' opening reports on August 28, 2009. On October 30, 2009, Plaintiffs served their responses to the reports. After several requests for extensions of time, Defendants served their rebuttal expert reports on January 8, 2010. According to Plaintiffs, the rebuttal reports contained more than 27 new arguments and more than 70 new scientific references in support of patent invalidity claims for which Defendants bear the burden of proof

by clear and convincing evidence.[11]   After Plaintiffs sought to submit supplemental reports in response to the new arguments and references, Defendants moved for [301] and were granted [306] a protective order precluding Plaintiffs from doing so.  Magistrate Judge Ashman stated in granting the protective order that Plaintiffs could later move to limit the contested arguments and references [306], giving rise to the instant motion *in limine*.

Plaintiffs argue that Defendants' omission of the arguments and references in experts' opening reports constitutes a violation of Rules 26(a) and (e) (discussed substantively *supra* in Sections II.A and II.E).[12]   In addition, Plaintiffs contend that the four *David* factors to consider in view of a Rule 26(a) or (e) violation—prejudice, inability to cure, disruption at trial, and bad faith—are satisfied here, and that preclusion of the relevant evidence under Rule 37(c)(1) therefore is required.  See *David*, 324 F.3d at 857.  With respect to prejudice, Plaintiffs state that Defendants failed to carry their burden of proof in their initial experts' reports by alleging without sufficient support their claims of patent invalidity.  Plaintiffs then had to show their cards in their response reports by presenting in detail their arguments contesting invalidity.  As a result, Defendants were able to submit rebuttal reports that had more force and precision than the opening reports would have had.   This flank attack, Plaintiffs contend, harmed them by unseasonably proffering an avalanche of new information and by improperly shifting the burden

---

[11]   Section 282 of Title 35 of the U.S. Code provides that "[a] patent shall be presumed valid * * *.  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  See also *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

[12]   Although Plaintiffs rest their argument on Rule 26(a)(2)(B), they do not contend here that Defendants' experts' initial reports were incomplete statements in and of themselves.   Rather, they argue that the addition of new arguments and references in the rebuttal reports was improper.   Their argument thus appears to turn on Rule 26(e)(2) regarding supplemental disclosures of experts rather than on Rule 26(a)(2)(B).   Rule 26(e) states that any party that discloses an expert report under 26(a)(2)(B) has a duty to supplement that disclosure with respect to the information included in the report and the information given during the expert's deposition when they learn that in some material respect the report is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1)-(2).   Nevertheless, the Court examines compliance with both rules in deciding this motion *in limine*.

regarding invalidity defenses to Plaintiffs. Due to the issuance of the protective order [306], Plaintiffs assert that they were unable to cure the harm by filing supplemental responses. Plaintiffs submit that admitting evidence pertaining to the new arguments and references will disrupt the trial and divert resources for both the Court and parties. They further argue that Defendants' failure to provide a complete statement in the opening reports in the first instance was willful, and that Defendants' subsequent requests for extensions of time to file their rebuttal reports in fact amounted to a bad faith stalling maneuver to marshal the new arguments and references and dump them on Plaintiffs as the clock for expert discovery was about to expire. For these reasons, Plaintiffs submit that exclusion of the 97 new arguments and references is warranted under Rule 37(c)(1).

Sister courts have held that supplemental disclosures cannot be used to correct significant omissions in initial reports. See *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998) (concluding that a supplemental report was so substantially different from initial report as to exceed the bounds of any reasonable notion of correcting incomplete or inaccurate expert report); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (precluding plaintiff from filing supplemental expert witness reports that substantially revised analysis in original reports and revised deposition testimony after court-imposed deadline for expert reports). "[S]upplemental expert opinions that threaten to belatedly send the case on a wholly different tack" may be precluded under Rule 37(c)(1). *Talbert v. City of Chicago*, 236 F.R.D. 415, 424 (N.D. Ill. 2006).

Experts' rebuttal reports—a type of supplemental report—are by nature responsive, and necessitate "a showing of facts supporting the opposite conclusion" of those at which the opposing party's experts arrived in their response reports. *ABB Air Preheater, Inc. v.*

*Regenerative Environmental Equipment, Inc*., 167 F.R.D. 668, 669 (D.N.J. 1996). In *103 Investors I, L.P. v. Square D Co.*, the court held that the rebuttal report of plaintiffs' expert did not advance a new theory of negligence, but merely provided a more specific identification than had the opening report of the type of defect in question. 372 F.3d 1213, 1217 (10th Cir. 2004). The court thus held that plaintiffs had not violated Rule 26. *Id.* In *Crowley v. Chait*, the court admitted plaintiff's expert's rebuttal report over defendant's objections that the expert could have included the assertions therein in her original report. 322 F. Supp. 2d 530, 551 (D.N.J. 2004). The court persuasively explained that the rule "does not automatically exclude anything an expert could have included in his or her original report. Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material. All that is required is for the information to repel other expert testimony, as [the rebuttal report] does." *Id.*[13]

Here, the Court provisionally finds that Defendants' experts' reports satisfied Rules 26(a) and (e). Fed. R. Civ. P. 26(a)(2)(B); 26(e)(2). The new arguments and references were offered to repel testimony offered by Plaintiffs' experts in their responsive reports. Even if they did not and a Rule 26 violation exists, the Court provisionally finds that Rule 37(c)(1) sanctions are not warranted. The new assertions do not appear to be so substantially different from the arguments and references included in the opening reports that they set the case on an entirely new tack. See

---

[13] In contrast to the presentation of a case-in-chief followed by a rebuttal case at trial—after discovery is complete and the parties often have a very good sense of their adversaries' theories of the case—an opening expert report is an early salvo in the process of defining the issues for trial, and thus it is more understandable at the expert discovery stage that a party may need to include significant elaboration in a rebuttal report to challenge the assertions of the opponent's expert reports. See, *e.g., ABB Air Preheater, Inc. v. Regenerative Environmental Equipment Co., Inc.*, 167 F.R.D. 668, 672-73 (D.N.J. 1996) (finding that patentee's submission of expert's opinions regarding secondary considerations of non-obviousness in rebuttal report did not violate Rule 26, as they properly rebutted adverse party's *prima facie* case of obviousness).

*Metavante Corp.*, 2010 WL 3385961, at *9 (holding that expert's supplemental report, combined with his original report, gave the opposing party "sufficient information to allow it to prepare adequately for his testimony" and contrasting the circumstances of a prior case in which "the expert clearly deviated from the established scope of his expected opinion" in his supplemental report). Nor were the rebuttal reports submitted at the eleventh hour; rather, they were presented nearly ten months prior to trial. Finally, the possibility of prejudice to Plaintiffs is reduced by the fact that the material to which Plaintiffs object pertains to an issue as to which Defendants bear the heavy burden of proving their case by clear and convincing evidence. See *Tech. Licensing Corp.*, 545 F.3d at 1327. For all of these reasons, the Court concludes that the contested rebuttal evidence is provisionally admissible and denies Plaintiffs' first motion *in limine*.

The Court hastens to reiterate that, in view of the complexity of trying to parse in a pre-trial vacuum what is new from what is old information and what is permissibly responsive from what is unseasonably averred in the expert reports, the Court's determination as to the admissibility of these 97 evidentiary items remains subject to revision before, during, and even after trial. See *Jonasson*, 115 F.3d at 440 (holding that deferral of evidentiary rulings until trial is appropriate when the *in limine* procedural environment makes evaluation of the evidentiary issue too difficult to resolve prior to trial). During this bench trial, the Court expects that it will develop a better understanding of the evolution of this case and the complex issues that it presents. As that process unfolds, the Court retains the authority to reconsider its pre-trial rulings. See *Luce*, 469 U.S. at 41-42 (holding that "a district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling"); *cf. Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage

in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves").

III.    Conclusion

For the reasons discussed above, the Court denies motions *in limine* [399, 412, 414, and 417], and grants in part and denies in part motion [409].   In addition, the Court grants Defendants' motion to file instanter a reply brief with respect to its motion *in limine* to exclude evidence on enablement [471].   Additional rulings on the *Daubert*-related motions *in limine* and the objections to Magistrate Judge Ashman's order will be issued in a separate opinion in due course.

Dated:  September 30, 2010                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge