**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BONE CARE INTERNATIONAL, LLC and GENZYME CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.: 08-cv-1083 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| PENTECH PHARMACEUTICALS, INC., and COBREK PHARMACEUTICALS, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' motion[1] and supporting briefs [526 and 533] seeking to bar Defendants from offering any evidence concerning Plaintiffs' alleged misrepresentations or omissions of prior art references to the U.S. Patent and Trademark Office ("PTO") during prosecution of the ancestor applications of the '116 patent, as well as Defendants' response in opposition to the motion [532] and response to Plaintiffs' reply [542]. Plaintiffs argue in support of their motion that because the Court dismissed four of Defendants' inequitable conduct counterclaims and affirmative defenses [327] and granted summary judgment for Plaintiffs on another inequitable conduct counterclaim and affirmative defense [496], any evidence that supported those counterclaims and affirmative defenses cannot now be introduced under Rule 404(b). Plaintiffs further argue that the evidence that Defendants seek to introduce constitutes improper propensity evidence, and thus is barred by Federal Rule of Evidence 404(b). For the reasons set forth below, Plaintiffs' motion [526] is denied.

---

[1] Although Plaintiffs do not style their opening memorandum [526] as a "motion," the Court views the submission as essentially a motion *in limine* because it seeks the exclusion of evidence that Defendants propose to offer at trial.

I.  **Summary of the Court's Prior Rulings on Defendants' Inequitable Conduct Counterclaims and Affirmative Defenses "A"-"E"**

Defendants alleged in counterclaims and affirmative defenses "A," "B," and "C" that inventor Bishop and Plaintiffs' attorneys Welch and Gulbrandsen engaged in inequitable conduct during prosecution of three ancestor applications of the '116 patent – the '371, '412, and '056 applications, respectively – by intentionally misrepresenting and omitting prior art references to the PTO, and that the '116 patent was therefore unenforceable under the doctrine of infectious unenforceability. [227] The Court determined that although Defendants showed a close relationship between the '116 patent and the ancestor applications, they failed to allege "an immediate and necessary relationship" between the '116 patent and the alleged prior inequitable conduct in the '371, '412, and '056 applications. [327] Accordingly, the Court concluded that Defendants failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and dismissed counterclaims and affirmative defenses "A," "B," and "C." [327]

Defendants alleged in counterclaim and affirmative defense "E" that Bishop made false and inconsistent statements about prior art references and omitted certain prior art references during prosecution of the '488 application, the continuation-in-part application that eventually issued as the '116 patent. [227] The Court dismissed counterclaim and affirmative defense "E" after finding that Bishop's characterizations and disclosure of the prior art references were made in good faith. [327]

In counterclaim and affirmative defense "D," Defendants alleged that during prosecution of the '488 application, Bishop, Welch, and Gulbrandsen intentionally failed to disclose eight prior art references, some of which had been used as bases for rejecting claims in ancestor applications. The Court denied Plaintiffs' motion to dismiss "D" on the ground that Defendants sufficiently alleged non-cumulativeness of the prior art references. [327] However, the Court

granted summary judgment on "D" on the ground that there was no genuine issue of material fact as to whether Plaintiffs had satisfied their duty of candor and good faith in dealings with the PTO by disclosing the eight references in the '488 application's ancestor applications. [496]

## II. Analysis

Defendants state that they will attempt to prove at trial their counterclaims and affirmative defenses "F" and "G," which allege that Plaintiffs engaged in inequitable conduct during prosecution of the '488 application, which ultimately issued as the '116 patent.[2] Inequitable conduct includes "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an *intent to deceive*." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) (emphasis added).

In order to prove the "intent" element of inequitable conduct counterclaims and affirmative defenses "F" and "G," Defendants seek to introduce evidence at trial that purports to show that Bishop, Welch, and Gulbrandsen intentionally made material misrepresentations to the PTO concerning prior art references and intentionally omitted prior art references during prosecution of the chain of applications leading up to and including the '488 application. Defendants argue that such evidence is relevant and admissible under Rule 404(b) to show intent, motive, plan, and absence of mistake or accident to deceive the PTO during prosecution of the '488 application.

Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident * * *."

---

[2] Defendants' counterclaim IX for attorneys' fees also remains pending.

3

Fed. R. Evid. 404(b). In the Seventh Circuit, a party seeking to offer prior bad acts evidence under Rule 404(b) must satisfy a four-part test: (1) the evidence must aim to establish a matter in issue other than the propensity of the non-asserting party to commit such an act; (2) the evidence must be similar enough and recent enough to be relevant to the matter in issue; (3) the evidence must be substantial enough that a trier of fact could find that the act occurred and that the party against whom the evidence is being offered was the actor; and (4) the probative value of the evidence must not be substantially outweighed by the potential for unfair prejudice to the party against whom the evidence is being offered. *Abbott Labs. v. TorPharm, Inc.*, 2003 WL 22462614, at *27 (N.D. Ill. 2003) (citing *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999)).

Plaintiffs first argue that Defendants cannot introduce evidence purporting to show alleged misrepresentations and omissions that inventor Bishop and attorneys Welch and Gulbrandsen made to the PTO during prosecution of the '371, '412, '056, and '488 applications because the Court dismissed Defendants' inequitable conduct counterclaims and affirmative defenses "A," "B," "C," and "E" and granted summary judgment on "D," which collectively pertained to those applications. [327] Plaintiffs submit that Defendants' attempt to introduce evidence of the alleged misrepresentations to the PTO with respect to the four applications seeks to impermissibly revive counterclaims and affirmative defenses "A"-"E" through a Rule 404(b) back door. As Plaintiffs observe, the Court reiterated in a subsequent motion *in limine* order [521] its earlier ruling [327] that Defendants may not at trial elicit testimony from their expert witnesses that goes to the claims of inequitable conduct that previously were dismissed.

Defendants respond that they seek to introduce evidence of misrepresentations during the prosecution of the prior applications not to establish inequitable conduct under the legal doctrine

4

of infectious unenforceability (a claim that they acknowledge was dismissed (see [327])), but rather to show that Dr. Bishop had the intent, motive, plan, and absence of mistake or accident to deceive the PTO during prosecution of the '488 application, which eventually issued as the '116 patent – the patent-in-suit.

As sister courts have noted, there is a "distinction drawn here between relying on inequitable conduct relating to the [ancestor application] as an independent basis for holding the [patent-at-issue] unenforceable, which is not the course followed here, and relying on the inequitable conduct relating to the [ancestor application] as evidence that may aid in determination of [plaintiffs'] intent with respect to conduct relating to the prosecution of the [patent-at-issue]." *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.*, 4 F. Supp. 2d 477, 487 n. 16 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000). Although not binding, this precedent is both analogous and persuasive. As Defendants recognize, they may not claim that the '116 patent is unenforceable under the doctrine of infectious unenforceability by seeking to establish inequitable conduct during prosecution of the ancestor applications; the Court's rejection of Defendants' counterclaims and affirmative defenses to that effect stands as the law of the case and bars any such claims. See *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 454 (7th Cir. 2005) (noting that law of the case doctrine mandates that "when an issue is once litigated and decided, that should be the end of the matter"). The Court's prior rulings thus render evidence that would be admissible *solely* for the purpose of establishing such claims irrelevant at trial. Given that the parties' expert reports were prepared prior to at least some of the Court's pertinent rulings (see [327, 521]), those reports undoubtedly contain material that is no longer appropriate for presentation at trial. The Court's prior commentary was intended to foreclose testimony on this and other material pertaining to the already-decided inequitable

conduct claims. However, the prior commentary cannot and should not be read so broadly as to bar the introduction of evidence regarding alleged misrepresentations and omissions during the prior applications for the separate and distinct purpose of showing intent, plan, motive, or lack of accident or mistake to deceive the PTO during prosecution of the '488 application. See *Arcade, Inc. v. Minn. Mining and Mfg. Co.*, 24 U.S.P.Q.2d 1578, 1589 (E.D. Tenn. 1991) (holding that evidence of inequitable conduct during prosecution history of a patent that was not the patent-at-issue was probative of party's intent to deceive PTO during prosecution of the patent-at-issue). The Court's prior orders and commentary did not resolve that question.[3] Whether Defendants' proposed evidence on the ancestor applications is admissible for those purposes turns on whether Defendants can satisfy the four-part Rule 404(b) test set forth above. See *Abbott Labs.*, 2003 WL 22462614, at *27.

Plaintiffs argue that the evidence of misrepresentations in the ancestor applications that Defendants seek to offer is inadmissible under Rule 404(b) because it fails to satisfy the first factor of the 404(b) test: that evidence must be offered for a purpose other than showing that a person has a propensity to act in conformity with their prior actions. See *id*. Such propensity evidence, as Plaintiffs correctly note (see *Abbott C.R. Bard, Inc. v. M3 Syst., Inc.*, 1994 WL 270252 at *2 (N.D. Ill. Jun. 16, 1994); *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563 (N.D. Ill. 1996)), would be inadmissible under Rule 404(b). The Court disagrees, however, that Defendants seek to introduce the evidence for the purpose of showing propensity. Rather,

---

[3] Footnote 10 of the Court's order [521] clearly states that Defendants' experts may not testify regarding claims of inequitable conduct as to which the Court has already granted a motion to dismiss or rendered summary judgment. The purview of that statement is self-evident; for the reasons stated above, it merely curtails testimony on the rejected claims, not testimony relevant to other claims and admissible under Rule 404(b). Thus, any amendment to footnote 10, as Defendants request in their [542] "response" to Plaintiffs' reply, is unnecessary.

Defendants have explained that they intend to offer the evidence to show that Bishop, Welch, and Gulbrandsen had the intent, motive, plan, and absence of mistake or accident to deceive the PTO during prosecution of the '488 application. For example, Defendants contend that Bishop's purported misrepresentations of prior art during prosecution of the ancestor applications will support their claim that he intended to deceive the PTO with respect to prior art references during prosecution of the '488 application. Similarly, Defendants posit that financial pressures motivated Bishop to deceive the PTO throughout the ancestral history of the '116 patent, and submit that the misrepresentations and omissions that he allegedly made in connection with the ancestor applications will support their position. The Court concludes that Defendants have shown that the evidence they seek to offer would go to the issues of intent, motive, plan, and accident of mistake or accident rather than to propensity. Defendants thus have satisfied the first factor of the Rule 404(b) test. See *Abbott Labs.*, 2003 WL 22462614, at \*27.

Plaintiffs also contend that the rationale underlying the Court's order [327] to dismiss counterclaims and affirmative defenses "A," "B," and "C" negates the second factor of the four-part Rule 404(b) admissibility test – namely, that evidence must be similar enough and recent enough to be relevant to the matter at hand. *Id.* Specifically, Plaintiffs argue that because the Court dismissed "A," "B," and "C" after finding that Defendants did not allege an *immediate and necessary relationship* between the '116 patent and the purported inequitable conduct in the ancestor applications, there is no evidence pertaining to those ancestor applications that is *similar enough and recent enough* to be *relevant* to the '116 patent.

Plaintiffs overstate the significance of the Court's dismissal of "A," "B," and "C." First, the Court's order [327] granted the motion to dismiss on the ground that Defendants failed to plead "A," "B," and "C" with particularity under the heightened Rule 9(b) pleading standard, not

that no evidence in support of Defendants' claims existed. Second, the Court notes that the Rule 9(b) standard for an inequitable conduct patent enforceability claim – that the party raising such a claim must show an *immediate and necessary relation* between the prior conduct and the patent-at-issue (see *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009)) – is more stringent than the Seventh Circuit's rule regarding the relationship between prior acts and the issue for which they are offered under Rule 404(b) (see *Abbott Labs.*, 2003 WL 22462614, at *27). Defendants' inability to satisfy the former does not foreclose their opportunity to try to make the requisite showing under the latter.

Defendants have provided adequate support to satisfy the second factor of the Rule 404(b) test. For instance, the '371, '412, and '056 applications are closely related to the '116 patent because they are ancestor applications of the patent, and because the '116 patent claims the benefit of the priority filing date of the '371 application in part through the '371, '412, and '056 applications. In addition, the '116 patent and its ancestor applications describe similar subject matter: a method for using 1-alpha-hydroxy-vitamin $D_2$ to treat purportedly related medical conditions. The applications are also reasonably related temporally: the '371 application was filed in 1988, the '412 application in 1990, the '056 application in 1991, and the '488 application in 1995. In light of the family lineage shared by the three applications, their similar subject matter, and their relative temporal proximity to one another, the Court finds that evidence pertaining to prosecution of the ancestor applications is similar enough and recent enough to the '116 patent's prosecution as to satisfy the second prong of the Rule 404(b) test. See *Semiconductor Energy*, 4 F. Supp. 2d at 480, 487, n.16 (finding a close relationship between the patent-at-issue and its ancestor patent, of which the defendant sought to offer evidence,

8

because of the family relationship between the two patents, the claim to priority tying one to the other, and the similar subject matter at issue in both).

Although Plaintiffs do not address the third factor of the Rule 404(b) test – namely, the substantiality of the evidence – Defendants describe the substance of the testimony that they intend to elicit regarding omitted or mischaracterized prior art references during the history of the '116 patent's prosecution. For example, Defendants state that their experts will testify to Bishop's role in drafting the '488 and ancestor applications that allegedly omitted or mischaracterized the references as well as the commercial stakes motivating the filing of the applications that ultimately led to issuance of the '116 patent. The Court determines on the basis of these examples that the evidence that Defendants seek to proffer is sufficiently substantial that, as trier of fact, it reasonably could find an intent to deceive the PTO during prosecution of the '488 application.

Finally, with respect to the fourth factor, the Court does not find at this juncture that the potential prejudice to Plaintiffs by the presentation of the evidence that Defendants seek to introduce substantially outweighs the probative value of the evidence. Furthermore, because this is a bench trial, the Court has more leeway to determine what weight, if any, to give the evidence that Defendants seek to offer and to disregard evidence later if, upon reflection, Rule 403 concerns so dictate.

### III. Conclusion

For the foregoing reasons and subject to the caveat set forth in the preceding paragraph, the Court concludes that Defendants have satisfied the four-factor Rule 404(b) test with respect to evidence they seek to offer of alleged misrepresentations and omissions to the PTO during

prosecution of the applications ultimately leading to issuance of the '116 patent. The Court therefore denies Plaintiffs' motion [526] to bar such evidence at trial.

Dated:  October 19, 2010

_____
Robert M. Dow, Jr.
United States District Judge